**Willie O. McCLAM, Plaintiff,**

v.

**CITY OF NORFOLK POLICE DEPT., et al., Defendants.**

Civ. A. No. 2:94cv238.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 3, 1995.

Sa'ad El–Amin, El–Amin & Crawford, P.C., Richmond, VA, for plaintiff.

Jacob Paul Stroman, IV, and Harold Phillip Juren, Deputy City Atty., Office of City Atty., Norfolk, VA, for defendant City of Norfolk Police Dept.

Stanley Graves Barr, Jr., Jonathan Lee Thornton, Kaufman & Canoles, Norfolk, VA, for defendants Henry P. Henson and Melvin High.

### MEMORANDUM OPINION AND ORDER
JACKSON, District Judge.

## I. INTRODUCTION

Plaintiff McClam brought this suit for compensatory and punitive damages, claiming that the Norfolk City Police Department discriminated against him by refusing to

transfer him to the detective division in retaliation for his filing complaints with the Equal Employment Opportunity Commission (EEOC), in violation of 42 U.S.C. §§ 1981, 1983, and 2000e, et seq. (Title VII of the Civil Rights Act of 1964 and 1991) (Hereinafter, Title VII). At the close of the bench trial, plaintiff also sought leave to amend his complaint to include a claim of racial discrimination.

The Court denies plaintiff's motion to amend, and therefore finds no basis for finding the defendant to be in violation of § 1981. The Court finds, however, that plaintiff has proved his claim of retaliatory discrimination in violation of Title VII and § 1983.

## II. FACTS

Plaintiff McClam became a police officer for the Norfolk City Police Department in March, 1971. McClam has served in various divisions of the police department, including the detective division, which he worked in from April 16, 1980 through January 16, 1984. He was involuntarily transferred at that time to the First Patrol Division.

In October 1983, McClam filed a complaint with the EEOC, alleging racial discrimination by the Police Department. He filed another EEOC complaint in January 1984, claiming retaliation for his past opposition to discrimination.

On April 22, 1990, in accordance with Norfolk Police Department General Order 84–3, which then governed transfers,[1] McClam requested a transfer to the detective division. Under the policies of the Police Department, an officer desiring a transfer to another division submitted a transfer request to the Chief of Police and Commanding Officer of the Division desired. The Commanding Officer would review the application, and if there was a favorable recommendation and the Chief of Police concurred, the applicant's name was placed on a transfer eligibility list in chronological order. Each applicant was considered according to his or her place on the transfer list, and a division filled a vacancy by selecting the first person on the trans-

fer list, unless a specific justification was submitted for selecting someone else. The Chief of Police decided whether the justification was sufficient. An applicant remained on the transfer eligibility list until selected for transfer or removed by the Chief of Police.

In the summer of 1990, a female police officer, Officer Lighthart, alleged that McClam committed sexual battery on her person. On August 6, 1990, the Police Department suspended McClam without pay, and six charges were issued against him under the Department's Rules and Regulations, General Orders, Special Orders, the Police Officer's Manual, and the City of Norfolk's Employees Policies and Procedures Manual. On August 17, 1990, McClam filed an employee grievance relating to his suspension. In December 1990, McClam filed a EEOC complaint, charging discrimination on the basis of his race and in retaliation for his past opposition to discrimination.

McClam was tried and acquitted in General District Court on criminal charges arising from Officer Lighthart's allegations, and his record was expunged on March 14, 1991. (Tr. at 27, 28; Ex. 40.) On August 23, 1991, a grievance panel found that an "incident" of some sort occurred between Officer McClam and Officer Lighthart, which fell somewhere between the perceptions of the two parties. The panel concluded that McClam should be reinstated September 1, 1991, but should not receive back pay for the thirteen month suspension. Following his reinstatement, McClam filed an EEOC complaint in November 1991, charging race discrimination and retaliation.

On April 23, 1993, McClam met with then Chief Henson for almost three and one-half hours to discuss the reasons he was being overlooked for transfer, while officers who were further down on the transfer list (McClam was first or second on the list for years) and who had less experience were being selected. After that meeting, Henson prepared a memo which purportedly estab-

---

1. The evidence established that the transfer policy under Chief of Police High, who assumed command on June 15, 1993, has changed. However, Chief High denied McClam's last request for transfer in August, 1993.

lished eligibility and selection criteria for transfer to the detective division. The memo provided that an officer needed two years as a sworn police officer and no more than two substantiated complaints within the last two years nor any complaints that resulted in suspension within the last two years.[2] Henson did not circulate the memo to any of the Department's command. This amended policy was prepared and recommended by Captain Burton, head of the detective division.

On May 5, 1993 and on August 10, 1993, McClam applied for a transfer to the detective division. Both of these applications were denied, although he met the established qualifications on each of the dates he applied for the transfer. Regarding the transfer of McClam, Captain Burton testified that he recommended that McClam not be transferred based on his performance in the detective division ten years earlier and his attitude. All of his superiors thought McClam was a "disruptive influence" and his performance was not "up to par" when he previously worked in the detective division and they did not see any change in him. He did not check with McClam's current supervisors. McClam's current immediate supervisor in the patrol division thought McClam would be a good candidate for the detective division. (Tr. at 108–111.) During trial, despite promising the Court it would produce records which would reflect McClam performed poorly, the City did not produce records to establish that McClam's performance in the detective division was poor. McClam introduced the only available case management report, which showed his performance in a one month period to be above average.

McClam was in the number one or two position on the transfer list during the three years Captain Burton headed the detective division. Captain Burton did not comply with the transfer policy. He did not counsel McClam on the denial of his transfer request and he could not produce any written explanation he had given the Chief of Police for denying McClam's transfer requests. He

never requested that McClam's name be removed from the eligibility list. (Tr. at 100.) Despite McClam being on the transfer eligibility list, Captain Burton considered him unsuitable for transfer to the detective division. (Tr. at 98.)

In August 1992, Captain Burton did not recommend the transfer of an officer to the detective division because the officer was under investigation for his improper handling of a rape case. On November 8, 1992, this officer was transferred to the detective division. On February 18, 1993, Captain Burton recommended that Officer McHenry, a white male, not be transferred to the detective division because he had recently been transferred from the vice and narcotics unit for insubordination and poor performance. This officer was transferred to the detective division on August 23, 1993. Captain Burton recommended that another officer be removed from the detective division transfer list, but the officer was also transferred to the detective division on August 23, 1993. (Tr. at 218–220.) On May 3, 1993, a female officer, who had three years experience as an officer, made application in the chief's office to transfer to the detective division. She was not on the transfer eligibility list. On the day of her application, he requested that she be transferred to the detective division. She was transferred on May 8, 1993. (Ex. 13, 49.)

Major Calogrides, Acting Police Chief, on recommendation of Captain Burton denied McClam's May 5, 1993 request for a transfer. Chief High became Chief of Police on June 15, 1993. In August 1993, Chief High also denied McClam's request for transfer on the recommendation of Captain Burton. Chief High testified that McClam had the qualifications to be a detective, (Tr. at 255), but expressed concern about his ability to close cases and get convictions by working with others. However, he admitted that he had not heard anything about McClam's inability to close cases.

2. Since McClam had a suspension in 1991, and at least two substantiated internal affairs division complaints (one in 1972 and the sexual harassment charge in 1990), under the amended transfer policy he was not qualified for transfer. (Tr. 117–118). Captain Burton, who authored the amended transfer policy, was aware of McClam's record when he recommended his request for transfer be denied.

On August 26, 1993, McClam filed a charge of discrimination with the EEOC, alleging discrimination on the basis of retaliation, as evidenced by the Police Department's refusal to transfer him to the detective division. The EEOC determined that the evidence did not support McClam's claim. The EEOC has taken no affirmative action as to any of McClam's EEOC charges, and McClam has not filed a lawsuit in any of the four previous charges.

## III. DISCUSSION

### A. MOTION TO AMEND THE COMPLAINT

■ At the close of trial, counsel for plaintiff requested leave of this Court to amend the complaint pursuant to Federal Rule of Civil Procedure 15(b).[3]

■ Plaintiff's counsel stated during both his opening and closing statements that the case was one based on a retaliation claim. See, e.g., Tr. at 7, 16, 25–26. It is clear from the record that throughout the trial neither party thought they were litigating a racial discrimination claim. Despite plaintiff's contention that the defendant introduced evidence indicative of a denial of equal protection based on race, the evidence in question is probative of the retaliation claim, and it is for this purpose the defendant introduced it. Therefore, the Court finds that the parties did not consent, either impliedly or explicitly, to litigating a claim based upon racial discrimination. This Court "will not imply consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim." Quillen v. International Playtex, Inc., 789 F.2d 1041 (4th Cir.1986).

3. Rule 15(b) states:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all aspects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial on these issues. If evidence is objected to at the trial on the

The Court notes, however, that even if it had allowed plaintiff to amend the complaint, he did not introduce sufficient evidence at trial to succeed on a claim of racial discrimination.

On consideration of the entire record, the request for leave to amend the complaint is denied.

### B. TITLE VII CLAIM

■ In order to succeed on the Title VII claim based on retaliation, the plaintiff must establish a prima facie case of retaliation by a preponderance of the evidence, consisting of three elements: the plaintiff engaged in protected activity; the employer took adverse employment action against the employee; and a causal connection existed between the protected activity and the adverse action. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985) (citations omitted) (applying the sequence of proof and burdens set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973) and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981), and comparing discriminatory treatment claims under Title VII to those arising out of a claim of retaliation); Adams v. Frank, 712 F.Supp 74, 77 (E.D.Va.1989). "As in disparate treatment cases, the burden of establishing a prima facie retaliation case 'is not onerous.'" Ross, quoting Burdine 450 U.S. at 253, 101 S.Ct. at 1093–94. Once the plaintiff has established a prima facie case, the burden shifts to the employer to produce a legitimate nondiscriminatory reason for the adverse act, thereby rebutting the presumption of retaliation. Adams at 77, citing Burdine 450 U.S. at 254–55, 101 S.Ct. at 1094–95.

ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Lastly, if the employer produces a legitimate nondiscriminatory reason why it took the adverse action, the plaintiff must prove "by a preponderance of the evidence that the defendant's stated reason was pretext for discriminatory actions." *Id.* citing *Burdine* at 256, 101 S.Ct. at 1095. To show that the employer's stated reason is pretextual, the plaintiff may present direct evidence of retaliation or demonstrate "that the stated reason is 'unworthy of credence.'" *Id.* quoting *Burdine* at 256, 101 S.Ct. at 1095. *See also, Lawrence v. Mars, Inc.,* 955 F.2d 902, 906 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 76, 121 L.Ed.2d 40 (1992) (reaffirming the required elements of a prima facie case of retaliation set out in *Ross,* and that the sequence of proof laid out in *McDonnell Douglas* is applicable in retaliation cases under Title VII).

■ In this case, McClam established retaliatory discrimination by a preponderance of evidence. Initially, he proved a prima facie case of retaliatory discrimination. First, McClam established that he engaged in protected activity by filing EEOC complaints on October 31, 1983; January 16, 1984; December 14, 1990; November 27, 1991; and August 26, 1993. The parties have stipulated to these filings.

Secondly, he established that adverse employment action was taken against him in the form of his being passed over for transfer to the detective division of the police department. He applied for transfer to the detective division on May 5, 1993 and again on August 10, 1993. Even though he was qualified for transfer to the detective division, the transfer requests were denied. The police department did not follow its internal procedures regarding transfers when McClam was continuously passed over, despite having been approved for transfer and being ranked first on the transfer list. In handling McClam's application for transfer, Captain Burton, commanding officer of the detective division, testified that he intentionally did not comply with the transfer policy, although he knew he was not exempt. (Tr. at 97.) He further explained to the Court that he did not follow the directive that he counsel those he passed over on what they needed to do to

improve themselves, unless they came to him and asked. (Tr. at 124, 137, & 141.) He did not counsel McClam as required.

■ Third, the plaintiff presented evidence showing a causal connection between his filing of the EEOC complaints and the denial of his requests for transfer. Essential to establish the causal link is that the employer must be aware that the employee engaged in the protected conduct. *Cohen v. Fred Meyer, Inc.* 686 F.2d 793, 796 (9th Cir.1982); See also *Ross, supra,* at 368 n. 9. Captain Burton testified that he was not aware that McClam had been filing EEOC complaints while in the detective division; rather, he became aware of the EEOC complaints when the depositions in this case were taken. (Tr. at 116.) But, he did discuss McClam with McClam's prior supervisors in the detective division. (Tr. at 109.) Chief High also testified that he was not aware McClam had filed EEOC complaints. (Tr. at 254.) The Court finds this testimony to be incredulous.

McClam has established through circumstantial evidence that before he was denied transfers the decisionmakers knew he had filed EEOC complaints. The Norfolk Police department is a paramilitary organization where there is an organized flow of critical information. The decisionmakers were in positions to have knowledge of McClam's EEOC complaints and had reasons to know of his continued EEOC complaints. Captain Burton was the commander of internal affairs division for three years and head of the detective division in his next assignment. And each Chief of Police involved was responsible for the operation and morale of the entire department.

Police officials provided testimony which indicate that the barest inquiry regarding McClam's complaints would reveal he filed EEOC grievances. They testified that McClam was considered a disruptive influence in the detective division (Tr. at 109); all of Captain Burton's supervisors thought he was a disruptive influence (Tr. at 121); and, Chief High vaguely expressed some concern about McClam being a part of the team in the detective division. (Tr. at 254–256.)

The Court finds that McClam was labelled a "disruptive influence" because he had filed EEOC complaints, as well as allegations he made to the internal affairs division of the police department against other investigators and supervisors in the detective division. (Ex. 21.) These allegations were at a minimum brought to the attention of Sergeant Dillard and Captain Williamson, the commanding officer of the detective division at the time. Common experience and all reasonable inferences which may be drawn from the facts convince the Court that the decisionmakers knew of McClam's prior EEOC complaints before he was denied transfer in May and August 1993, at a minimum based on their characterization of him as disruptive. Therefore, the court finds more than sufficient evidence to establish a causal connection between plaintiff's filing EEOC complaints and his being denied transfers to the detective division.

■ As its legitimate, non-discriminatory reason for not transferring McClam, the City claimed a couple of reasons; namely, that he had performed poorly in the detective division in the past, he had a disciplinary record, and he would not work well with the "team" in the detective division.

By a preponderance of the evidence McClam showed that the City's reasons were pretextually applied to mask an illegal animus. Despite the defendant's contention that McClam performed poorly in the detective division in the past, they could offer little proof of this. The defendant produced testimony of McClam's performance in the detective division in 1983. Captain Burton testified that he did not consult McClam's current supervisors about his performance. The defendant produced none of the case management records they assured the court they would present to prove McClam's poor performance. McClam, on the other hand, put into evidence a case management record for April 1993, which all parties agreed showed his performance for that month to be very strong. McClam also introduced a couple of positive performance evaluations.

The most telling evidence of pretext here is proof that the articulated reason for refusing to transfer McClam based on his disciplinary record was not consistently applied in the past. The nature of the grievance panel's findings on the 1990 allegations of sexual harassment remains unclear. What is clear, however, is that other officers similarly situated were transferred to the detective division. Officers Million and McHenry were transferred to the detective division despite having not been recommended for transfer because of prior disciplinary actions or investigation. Captain Burton, the supervisor of the detective division, in a February 18, 1993 memo to the Chief of Police did not recommend Officer McHenry because he had recently been transferred from the Vice and Narcotics Unit for insubordination and poor performance; Officer McHenry was transferred into the detective division on August 23, 1993. Officer Million was transferred into the detective division on November 8, 1992, despite the fact that less than three months earlier he was not recommended because he was currently being investigated by internal affairs for inaction during a domestic rape incident.

The facts indicate to the Court that McClam was kept out of the detective division because other officers, including Captain Burton, did not wish to work with him, because he caused "morale" problems. Captain Burton testified that he did not look at McClam's performance evaluations, although the department is required to do annual evaluations; because everyone he talked to about McClam, including his supervisors (referring to his senior staff of four unit lieutenants), did not want him in the detective division, because he was a "disruptive influence" and "his performance before wasn't up to par, and they didn't see any change in him." (Tr. at 121, 150–51.) These lieutenants felt that McClam was "argumentative when the supervisor tried to counsel him and he didn't get along well with his peers." Yet, plaintiff introduced a performance evaluation from October 1983, where Sergeant Dillard indicated Investigator McClam was cooperative with officers from other divisions, respectful to witnesses and victims, and took complete and accurate statements from witnesses and suspects. (Ex. 43.) Captain Burton admitted both that he had not looked at this

evaluation, or any of McClam's performance evaluations from 1980–83 (when McClam served in the detective division), and that the evaluation was inconsistent with a person who was "disruptive".

Chief High testified that he thinks Officer McClam is "a good police officer" and is qualified to be a detective, but he would not orchestrate the situation because an officer does not close cases alone, but needs to "rely on a lot of pieces of a team". (Tr. at 255–56.) Apparently, Chief High is concerned about McClam's ability to work with the other officers in the detective division. However, Chief High also testified that a patrol officer is often the first person on the scene of a crime, in many instances is critical to the prosecution of criminal cases, and has to work closely with the detective division on continuing investigations. He has not heard that Officer McClam has an inability to work with anyone in the patrol division, nor that he has any inability to close cases when required to work with the detective division. (Tr. at 257.)

## C. *SECTION 1983 CLAIM*

■ Pursuant to 42 U.S.C. § 1983, plaintiff must allege facts that show the defendant acted under color of state law in denying his rights, privileges, or immunities secured by the Constitution or the laws of the United States. *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Analytically, plaintiff's claims under 42 U.S.C. § 1983 may also be reviewed under the *McDonnell Douglas* three-step format. *Abasiekong v. City of Shelby*, 744 F.2d 1055, 1058 (4th Cir.1984). As set out in the Title VII discussion, this involves the plaintiff establishing a prima facie case, the burden shifting to the defendant to put forth a legitimate, non-discriminatory purpose for the action taken, and finally, plaintiff showing that the stated reason is merely pretext. *McDonnell Douglas, supra,* 411 U.S. at 802–804, 93 S.Ct. at 1824–25. When analyzed using the *McDonnell Douglas* format, and for the reasons stated above, the court finds that plaintiff has made out a claim of retaliatory discrimination under § 1983 as well as Title VII.

## IV. DAMAGES

■ The actual monetary damages in this case are slight. The parties agree that as a detective, McClam would have received about $100 extra pay per month. Of that additional pay, however, $50 was a clothing allowance for the street clothing detectives wear in place of a uniform. Since McClam did not spend the money on additional street clothing, he did not suffer damage from not receiving this additional $50 per month. Therefore, the only tangible damages are $50 per month in pay for a period of 18 months, which totals $900.00.

As intangible injuries stemming from his ordeal, McClam testified about having headaches, feelings of not wanting to come to work and other changes in attitude and devotion to his job, a lowering of his self esteem, as well as difficulty sleeping. The Court awards McClam additional compensatory damages in the amount of $15,000.00 for this emotional distress and humiliation. This award is consistent with cases awarding damages for intangible injuries resulting from a violation of constitutional rights. *See, e.g., Cygnar v. City of Chicago*, 865 F.2d 827, 848 (7th Cir.1989).

■ Punitive damages are not available against a municipality in a § 1983 action. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 252–72, 101 S.Ct. 2748, 2752–62, 69 L.Ed.2d 616 (1981); *Angell v. Leslie,* 832 F.2d 817, 821 (4th Cir.1987). Likewise, Title VII exempts "a government, government agency or political subdivision" from punitive damages. 42 U.S.C. § 1981a(b)(1); *See, Beth v. Espy*, 854 F.Supp. 735, 736–737 (D.Kan. 1994) (exemption for punitive damages against government includes Secretary of Agriculture).

## V. CONCLUSION

The Court **AWARDS** plaintiff damages in the amount of 15,900.00 dollars. The Court also **GRANTS** injunctive relief, and **ORDERS** the Norfolk City Police Department to transfer Officer McClam to the detective division. The Court further **AWARDS** plain-

tiff reasonable attorney fees and costs of this action.

The Clerk is **DIRECTED** to send a copy of this order to counsel for the plaintiff and to counsel for the defendant.

It is so **ORDERED.**