143 F.3d 835
 76 Fair Empl.Prac.Cas. (BNA) 1480,
73 Empl. Prac. Dec. P 45,422
In re BOARD OF COUNTY SUPERVISORS OF PRINCE WILLIAM COUNTY,
VIRGINIA; Charlie T. Deane, Prince William County
Police Chief, Petitioners.
 No. 97-1878.
 United States Court of Appeals,
Fourth Circuit.
 Submitted April 27, 1998.
Decided May 11, 1998.
 
 ON PLEADINGS: Sharon E. Pandak, County Attorney, Angela M. Lemmon, Assistant County Attorney, Prince William, VA, for Petitioners. John M. Bredehoft, Elaine C. Bredehoft, Linda M. Jackson, Charlson & Bredehoft, P.C., Reston, VA, for Respondent.
 Before ERVIN, HAMILTON, and LUTTIG, Circuit Judges.
 Remanded by published PER CURIAM opinion.
 OPINION
 PER CURIAM:
 
 
 1
 In Hetzel v. Prince William County, --- U.S. ----, 118 S.Ct. 1210, 140 L.Ed.2d 336 (1998), the Supreme Court reversed our order of mandamus to the district court which had instructed the district court to recalculate the damages award to plaintiff so as not to exceed an amount specified and enter final judgment thereon. Because the unpublished order that was reversed by the Court comprised only two substantive sentences, however, we believe that the public, as well as the Supreme Court, is entitled to an explanation of this court's prior action.
 
 
 2
 Plaintiff Janice Hetzel, a police officer in Prince William County, Virginia, brought an action against the County's Police Chief and other police officers under Title VII and 42 U.S.C. § 1983, alleging harassment and discrimination on the basis of sex and national origin. Hetzel also alleged that she was retaliated against for attempting to assert her right not to be discriminated against. Hetzel requested $9.3 million in damages, plus backpay, retroactive promotion, and other injunctive relief.
 
 
 3
 The jury rejected every one of Hetzel's seven claims of sex and national origin discrimination. The jury did conclude, however, that the County's Chief of Police had, in violation of the First Amendment, retaliated against Hetzel for asserting her rights. For the violation of this right, the jury awarded Hetzel $750,000 in damages for emotional distress. The district court reduced the $750,000 award to $500,000, and awarded Hetzel in excess of $180,000 in attorney's fees and costs.
 
 
 4
 On appeal to this court, we affirmed the judgment of liability on plaintiff's retaliation claims against the County. Hetzel v. County of Prince William, 89 F.3d 169 (4th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 584, 136 L.Ed.2d 514 (1996). We vacated both the damages award on the retaliation claim and the attorney's fees award, however, as excessive as a matter of law, observing with respect to the former: "[T]he award of $500,000 was grossly excessive when compared to the limited evidence of harm presented at trial and would result in a serious 'miscarriage of justice' if upheld." 89 F.3d at 173. Insofar as is relevant now, we directed the district court on remand to recalculate the award for emotional distress, "closely examin[ing] the awards in Bradley v. Carydale Enter., 730 F.Supp. 709, 726-27 (E.D.Va.1989), and McClam v. City of Norfolk Police Dep't., 877 F.Supp. 277, 284 (E.D.Va.1995)," which we told the district court we believed were "comparable to what would be an appropriate award in this case." 89 F.3d at 173.
 
 
 5
 The awards in Bradley and McClam were $9,000 and $15,000, respectively.
 
 
 6
 Rather than seek en banc rehearing in this court, Hetzel sought certiorari in the Supreme Court. In her petition for certiorari, Hetzel did not argue that our mandate to the district court to calculate damages within the specified range constituted a violation of the Seventh Amendment because it denied her the choice between remittitur and a new trial; indeed, Hetzel did not even cite in her petition for certiorari to Kennon v. Gilmer, 131 U.S. 22, 9 S.Ct. 696, 33 L.Ed. 110 (1889), the case on the basis of which she sought certiorari the second time. Rather, Hetzel argued only that this court had failed to review the district court's judgment under an abuse of discretion standard as required by Gasperini v. Center for Humanities, 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). The Supreme Court denied certiorari. --- U.S. ----, 117 S.Ct. 584, 136 L.Ed.2d 514 (1996).
 
 
 7
 Following the denial of certiorari, the district court on remand did not follow this court's order without substantive explanation, recalculating plaintiff's damages at $50,000, not at between $9,000 and $15,000 as directed. See Tr. of Proceedings Dec. 20, 1996 at 8-13; see also Order of Dec. 20, 1996. As the district court subsequently explained (in a footnote) with respect to our order that the court recalculate damages in the range of $9,000-$15,000:
 
 
 8
 In its opinion, the Fourth Circuit directed this court to "closely examine the awards in Bradley v. Carydale Enter., 730 F.Supp. 709, 726-27 (E.D.Va.1989) and McClam v. City of Norfolk Police Dep't., 877 F.Supp. 277, 284 (E.D.Va.1995), which we believe are comparable to what would be an appropriate award in this case." 89 F.3d at 173. Although these two bench trials awarded compensatory damages of $9,000 and $15,000, respectively, this Court concluded based on its observation of all the evidence presented during the eight day trial that a somewhat higher award was justified.
 
 
 9
 Mem. Op. at 3 n. 1 (June 24, 1997) (emphasis added). The district court also, at least initially, denied Hetzel's motion for a new trial, see Tr. of Proceedings Dec. 20, 1996, at 4, 13; see also Order of Dec. 20, 1996, itself understanding that a new trial would have been inconsistent with our mandate. Tr. of Proceedings Dec. 20, 1996 at 4 ("I see nothing in [the Court of Appeals'] opinion that tells me that I am to conduct a new trial because, in fact, the original trial has been affirmed by the Court of Appeals.").
 
 
 10
 In its order of December 20, 1996, finalizing its recalculation of the damages award and denying Hetzel's motion for new trial, the district court directed Hetzel to accept the recalculated amount or move for a new trial by January 10, 1997. Because the district court had stated from the bench that it denied a new trial, the parties neither briefed the "new trial" question further nor sought additional argument. On January 17, 1997, defendants appealed to this court the district court's order recalculating damages and denying a new trial, and we stayed the appeal pending the district court's order memorializing its denial of Hetzel's request for a new trial.
 
 
 11
 Six months later, on June 24, 1997, the district court reversed course, granting the new trial requested by Hetzel. As to Hetzel's claim that she was entitled to a new trial on the question of damages, the district court reasoned that "[w]hether the jury verdict is reduced by the trial or appellate level court makes no difference to the Seventh Amendment right of trial by jury." Mem. Op. at 7. Although acknowledging that we had not had a Seventh Amendment issue before us, Mem. Op. at 5, the district court, relying upon an opinion from the United States Court of Appeals for the Federal Circuit, Oiness v. Walgreen Co., 88 F.3d 1025 (Fed.Cir.1996), concluded that we, as the appellate court, had been without authority to order the recalculation of damages without offering the plaintiff the option of a new trial:
 
 
 12
 Therefore, in holding that a jury damage award is excessive, an appellate court has two options. It may simply reverse the jury award and order a new trial or allow the plaintiff the option of agreeing to a remittitur in a specified amount.
 
 
 13
 Mem. Op. at 7 (quoting Oiness, 88 F.3d at 1030) (emphasis added). The district court did not cite any other caselaw in support of its conclusion as to the Seventh Amendment limitations upon an appellate tribunal--neither from this Circuit nor, more significantly, from the Supreme Court. Having concluded that, as an appellate court, we could not have proceeded as we did, the district court concluded that Hetzel was entitled to a new trial under the Seventh Amendment. Mem. Op. at 7.
 
 
 14
 On July 7, 1997, Prince William County filed with this court its "Petition For A Writ Of Mandamus Or Prohibition" pursuant to 28 U.S.C. § 1651. In that petition, the County sought only,
 
 
 15
 an Order from this Court to the ... Judge of the Eastern District of Virginia, directing her to stay further proceedings ... pending this Court's determination as to whether the District Court has complied with the mandate of this Court's opinion in Hetzel v. Prince William County, 89 F.3d 169 (4th Cir.1996).
 
 
 16
 Petition at 1. Insofar as are relevant, the two issues presented to us by the petition were as follows:
 
 
 17
 Does this Court have jurisdiction to issue a writ of mandamus or prohibition to stay further proceedings in (Hetzel I ) so that this Court may determine whether the District Court's order granting a new trial misconstrues this Court's decision in Hetzel v. Prince William County, 89 F.3d 169 (4th Cir.1996)?
 
 
 18
 Did the District Court misconstrue the mandate of this Court, issued in Hetzel v. Prince William County, 89 F.3d 169 (4th Cir.1996), to recalculate damages and attorney's fees, in ordering a new trial on the issue of damages because Plaintiff below does not accept the trial court's recalculation?
 
 
 19
 Id. at 2. Consistent with the issues as so framed, the County argued that we had jurisdiction, by way of mandamus, to determine whether a district court had disobeyed or misconstrued one of our orders. Id. at 6. It likewise argued that we had the authority to order the recalculation of damages, specifically noting that the district court had, for its contrary conclusion, relied almost entirely upon caselaw on whether a trial court has the power to order a reduction of damages without allowing the plaintiff the option of a new trial. Argued the County:
 
 
 20
 [These cases] do not stand for the proposition for which they have been used: that a new trial must always follow an appellate reversal for insufficiency of the evidence. Further, they do not involve mandates from appellate courts like the one issued in this case.
 
 
 21
 Neither Officer Hetzel nor the District Court have cited authority for the proposition that if a litigant who has been afforded a full opportunity to present her case, fails to make a showing that can support a jury verdict as a matter of law, then she is entitled under the Seventh Amendment to another chance to present the evidence necessary to sustain the verdict she wants.
 
 
 22
 Id. at 9.
 
 
 23
 Finally, the County advanced the argument that a new trial would be a waste of judicial resources because any new damages award would still be subject to the ceiling that we effectively imposed in our original opinion:
 
 
 24
 Assuming ... for the sake of argument that the mandate here is broad enough to permit reference of the damages issue to a new trial, at the end of that trial, the District Court will find itself in the same position it was in before ordering a new trial: subject to this Court's determination that any damage verdict out of line with McClam and Bradley in this matter is excessive as a matter of law. Presumably, then, if a verdict is returned in a new trial which exceeds the legal limits established by the Court of Appeals, the District Court would be required to order remittitur. Undoubtedly, Officer Hetzel's argument at that point will be that she would not then be required to accept remittitur, she would be entitled to a third trial. If Officer Hetzel's argument is accepted, this litigation will go on indefinitely until she is prepared to accept the mandate of the Court of Appeals.
 
 
 25
 Id. at 16.
 
 
 26
 In opposing the petition for mandamus, Hetzel argued that the district court had not misread our mandate, but even if it had, this was "a mere error of law susceptible to direct appeal after entry of a final order." Appellee's Opposition to Appellants' Petition for A Writ of Mandamus or of Prohibition at 2. Hetzel began her entire argument, "Since the errors claimed by appellants are mere errors of law, which may readily be corrected on appeal after entry of final judgment, an extraordinary writ is not appropriate." Id . at 2. Indeed, Hetzel specifically urged us not to reach the Seventh Amendment issue in the course of ruling on the mandamus petition:
 
 
 27
 Since this Court may examine this issue [whether the Seventh Amendment required the new trial order] upon direct appeal after the issuance of a final order in the district court, there is no reason to reach the issue now.
 
 
 28
 Id. at 5 (emphasis added). Hetzel went on to argue conclusorily--citing Kennon v. Gilmer for the first time in either this court or the Supreme Court--that, if we did address the Seventh Amendment issue, we should hold that the district court was not in error in ordering that Hetzel be offered the choice between the reduced damages award and a new trial.
 
 
 29
 Thus was the case postured when this court deliberated on the County's petition for mandamus (and Hetzel's opposition to mandamus), the grant of which by this court was reversed by the Supreme Court. On the mandamus issue as presented by the parties, we believed that, by setting damages at $50,000 instead of calculating them within the range of $9,000-$15,000, the district court had clearly failed to comply with our earlier decision. On the Seventh Amendment issue, Hetzel had been before the Supreme Court once, on appeal from our original decision; she had not raised the Seventh Amendment remittitur issue at all; and the Supreme Court had denied certiorari on the only Seventh Amendment claim that she had raised. The district court had once denied Hetzel's new trial motion, then reversed itself, only cursorily addressing the remittitur issue in its final opinion--and without even as much as a citation to Kennon or to any other Supreme Court authority. The Seventh Amendment issue had not been briefed by either party before this court. And Hetzel herself, in opposing the mandamus petition, argued that we need not and should not address the Seventh Amendment issue until appeal from a final judgment by the district court.
 
 
 30
 This court was fully aware at the time that it granted the County's petition for mandamus that there was an important Seventh Amendment issue in the case. In fact, from Hetzel's alternative argument in her briefing in opposition to the petition for mandamus, see Appellee's Op. at 6-7, the court was familiar with the Supreme Court's decision in Kennon v. Gilmer, the authority on the basis of which the Supreme Court reversed our decision. The court believed, however, that the Seventh Amendment question was exceedingly more difficult than the district court recognized and than Hetzel argued, because of the Supreme Court's recent decisions in Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996), and BMW v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), neither of which were cited by the district court and only the former of which was cited by Hetzel in her opposition to mandamus. See Appellee's Op. at 5-6; see also id. at 5 ("Until quite recently, the Supreme Court had never expressly held 'that the Seventh Amendment allows appellate review of a district court's denial of a motion to set aside an award as excessive.' ") (quoting Browning-Ferris Industries v. Kelco Disposal, 492 U.S. 257, 279 n. 25, 109 S.Ct. 2909, 2922 n. 25, 106 L.Ed.2d 219 (1989)).
 
 
 31
 In Gasperini, for the first time in modern history, the Court addressed whether the Seventh Amendment permits appellate review of a trial court's decision to deny a motion to set aside a jury verdict as excessive. As the Court recognized, in contrast to the trial courts' established discretion to grant a new trial if the verdict appears against the weight of the evidence, appellate court review of a trial court's action denying a motion to set aside a jury verdict for excessiveness "[was] a relatively late, and less secure, development." 518 U.S. at 434, 116 S.Ct. at 2223. The Court noted that, in fact, appellate court review of such trial court denials "was once deemed inconsonant with the Seventh Amendment's reexamination clause." Id. (citing Lincoln v. Power, 151 U.S. 436, 437-38, 14 S.Ct. 387, 388, 38 L.Ed. 224 (1894)). And it explained that the Court had twice granted certiorari to decide the "unsettled" question of whether appellate courts could review trial court denials of motions to set aside jury verdicts for excessiveness, but ultimately failed to decide the question. Id. (citing Grunenthal v. Long Island Railroad Co., 393 U.S. 156, 158, 89 S.Ct. 331, 332-33, 21 L.Ed.2d 309 (1968) and Neese v. Southern Railroad Co., 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60 (1955)).
 
 
 32
 The Court then held, for the first time, that the Seventh Amendment permits appellate review of a trial court's decision to deny a motion to set aside a jury verdict as excessive. In reasoning that we believed could be very significant to the resolution of the Seventh Amendment issue with which we might be faced, the Court stated as follows:
 
 
 33
 [A]ppellate review for abuse of discretion is reconcilable with the Seventh Amendment as a control necessary and proper to the fair administration of justice: "We must give the benefit of every doubt to the judgment of the trial judge; but surely there must be an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable men may differ, but a question of law."
 
 
 34
 518 U.S. at 435, 116 S.Ct. at 2223 (quoting Dagnello v. Long Island Railroad Co., 289 F.2d 797, 806 (2d Cir.1961)) (emphasis added). That is, the Court held that appellate review of trial court excessiveness determinations was permissible under the Seventh Amendment precisely because the nature of that review was legal rather than factual.
 
 
 35
 Only one month earlier, in analogous reasoning in BMW v. Gore, the Supreme Court had, also for the first time ever, actually invalidated a punitive damages award (as already reduced by a state supreme court) as "grossly excessive" and therefore in violation of the Due Process Clause of the Fourteenth Amendment--clearing the way for appellate review of punitive damages awards. See also TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (recognizing due process limit on punitive damages awards but not invalidating award); Pacific Mutual Life Ins. Co. v. Haslip, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) (same).
 
 
 36
 While we now know that we were in error in so believing, we believed at the time that we disposed of the County's mandamus petition that, in the face of the Supreme Court's very recent decisions in Gasperini and BMW, a substantial constitutional question had emerged as to whether the Court's decision in Kennon could be understood as controlling the disposition of the Seventh Amendment issue with which we thought we might be confronted. In Kennon--a decision over a century old that has not been cited by the Court since 1935--the Supreme Court of the Territory of Montana had reduced a jury award to the plaintiff for injuries sustained when he jumped from a stage coach as the "horses became unmanageable, broke the pole of the coach and took fright." 131 U.S. at 23, 9 S.Ct. at 696. The territorial supreme court had, without ordering conditional remittitur, entered "absolute judgment" for the reduced amount. The Supreme Court had reversed, holding that it was error for the Montana court to have "enter[ed] an absolute judgment for the lesser sum, instead of ordering that a judgment for that sum should be entered if the plaintiff elected to remit the rest of the damages, and that if he did not so remit there should be a new trial of the whole case." Id. at 29-30, 9 S.Ct. at 699.
 
 
 37
 We understood that there was no necessary incompatibility between the recognition of an appellate power to review either a district court's denial of a motion to set aside, or a jury verdict itself, for excessiveness and a requirement that the plaintiff ultimately be afforded a choice between accepting a reduced award or a new trial. On the other hand, it was not clear to us that, for example, post-BMW, the Court would necessarily conclude that a plaintiff would be denied his Seventh Amendment jury right unless he were offered a completely new trial (or at least a completely new trial on damages) following an appellate decision that damages beyond a specified amount would be excessive as a matter of constitutional law. And we could think of no reason why, if the Court were to conclude that a complete new trial is not required where the appellate court holds as a matter of constitutional law that the awarded damages were excessive, such a holding would not also obtain in the context, identical in principle, where an appellate court determines that the award is excessive as a matter of statutory, common, or other law.
 
 
 38
 We thought it possible that, at the very least, a modified remittitur, which would account for the newly legitimized appellate determinations of excessiveness as a matter of law and recognize the damages ceiling imposed by the appellate court as law of the case, might well be consistent with the Seventh Amendment. Otherwise, it appeared, our decision--or for that matter any appellate court's decision--that damages beyond a specified amount are impermissible as a matter of law, would be an empty judgment, without any legal effect at all, for at a new trial the jury would be free to award any amount it wished without regard for the appellate court's determination. That at least a modified remittitur might be permitted, if not required, seemed especially possible, given the reasoning of Gasperini, noted above, that the Seventh Amendment is not violated by appellate review because excessiveness is a question of law, not of fact; if appellate excessiveness review is permissible under the Seventh Amendment for this reason, then it seemed at least arguable that an appellate court's order that damages not be awarded in excess of a specified amount would not itself be in violation of the Seventh Amendment. "Excessiveness" is a question of law and it seemed that that determination by the appellate court would not deprive the plaintiff of the Seventh Amendment right. In fact, in BMW, for reasons unrelated to incorporation insofar as appears from the opinion, the Supreme Court itself declined to express an opinion on "[w]hether the appropriate remedy requires a new trial or merely an independent determination" by the lower court. BMW, 517 U.S. at 586, 116 S.Ct. at 1604.
 
 
 39
 Further compounding the difficulty of the issue was the fact that the district court had not ordered an entirely new trial, as the Supreme Court had in Kennon, but, rather, a new trial only on damages, eliminating, it seemed to us, any incentive for the plaintiff to accept a reduced award. See Kennon, 131 U.S. at 30, 9 S.Ct. at 699 (explaining that plaintiff should have been given right of remittitur and that if he did not remit, "there should be a new trial of the whole case"); see also id. (noting that "plaintiff was prejudiced, because he was deprived of the election to take a new trial upon the whole case"); id . (noting that defendants were prejudiced because, if the plaintiff had been offered remittitur and declined, defendants "would have had a new trial generally"). In other words, it seemed to us that permitting the plaintiff to retain her finding of liability against the defendants and retry only the issue of damages would create an affirmative incentive for the plaintiff unilaterally to force the defendant to proceed through trial after trial, ad infinitum, until the plaintiff received the damages award she wished (through forced settlement if not through jury verdict)--a consequence we were reluctant to conclude, at least uncritically and without briefing or argument, that the Seventh Amendment would require. As the County succinctly put the dilemma in its mandamus petition:
 
 
 40
 at the end of that trial, the District Court will find itself in the same position it was in before ordering a new trial: subject to [the appellate court's] determination that any damage verdict out of line with [the appellate court's determination] is excessive as a matter of law. Presumably, then, if a verdict is returned in a new trial which exceeds the legal limits established by the [appellate court], the District Court would be required to order remittitur. Undoubtedly, [the plaintiff's] argument at that point will be that she would not then be required to accept remittitur, she would be entitled to a third trial. If [the plaintiff's] argument is accepted, this litigation will go on indefinitely until [the plaintiff] is prepared to accept the mandate of the [appellate court].
 
 
 41
 Petition at 16.
 
 
 42
 Facing what we believed at the time was this potentially difficult constitutional question, we thought that the most prudent course, as an inferior appellate court, was to proceed cautiously, avoiding what we then viewed as the premature decision of the Seventh Amendment issue, and to address ourselves first to the district court's obvious noncompliance with our earlier mandate. Once that noncompliance was remedied, we concluded, we could address ourselves to the Seventh Amendment question. This course recommended itself particularly because Hetzel herself, as noted, urged that the Seventh Amendment issue need not and should not be decided on the mandamus petition and, indeed, affirmatively maintained that the question could be decided on direct appeal following entry of a final order by the district court. Deferral of resolution of the constitutional issue also seemed wise in light of the facts that the district court's opinion had inadequately addressed the issue; the parties had not briefed the issue before us, or even, it appears, before the district court; and we were aware of no case that had considered the remittitur question in the wake of the Supreme Court's new holdings in Gasperini and BMW.
 
 
 43
 We accordingly did not address the Seventh Amendment issue when we issued the writ of mandamus to the district court, ordering it to comply with the mandate of our original opinion. Rather, we simply ordered the district court to recalculate the damages award in the manner that we had previously instructed and directed the court to enter final judgment in that amount, in order that an appeal could immediately be taken. We did not regard this action as an order to enter "absolute judgment" in the sense that that phrase is used in Kennon, because we fully expected, as Hetzel suggested in her opposition to mandamus she would, that Hetzel would then appeal the district court's final judgment, raising as an objection that the failure to offer her the choice of remittitur or a new trial constituted a violation of her Seventh Amendment right to a jury trial. At that time, with full briefing from both parties, we could squarely address the substantial Seventh Amendment questions presented after Gasperini and BMW, including whether the plaintiff must be offered the choice of an entirely new trial on liability and damages, as the Supreme Court ordered in Kennon, or whether it is permissible to offer the plaintiff a retrial of the issue of damages alone, as the district court permitted.
 
 
 44
 The Supreme Court has now decided the issues we reserved, holding that, following an appellate court's reversal of a district court's denial of a motion to set aside a jury's damages award as excessive (or, as here, modification of a district court's reduction order), the plaintiff is entitled to the same procedure to which he would have been entitled following a trial court's reduction of the jury's award. The Supreme Court has held not only that the plaintiff is entitled, as the Court said in Kennon, to "a new trial upon the whole case," 131 U.S. at 30, 9 S.Ct. at 699, but that the plaintiff is entitled to a new trial on the issue of damages alone, compare Hetzel v. Prince William County, --- U.S. ----, 118 S.Ct. 1210 ("the district court granted petitioner's motion for a new trial on the issue of damages"), with id. ("The District Court correctly afforded petitioner the option of a new trial when it entered judgment for the reduced damages.").
 
 
 45
 Our obligation is to ensure that the plaintiff receives this right of conditional remittitur, as defined by the Supreme Court.
 
 
 46
 Our judgment having been reversed, "the case ... stand[s] as if no such judgment had been entered," and we are "at liberty, in disposing of the motion for a new trial according to [our] view of the evidence, either to deny or to grant a new trial generally, or to order judgment for a less sum than the amount of the verdict, conditional upon a remittitur by the plaintiff." Kennon, 131 U.S. at 30, 9 S.Ct. at 699.
 
 
 47
 The Supreme Court having not disturbed our order of mandamus insofar as it directed the district court to recalculate damages, that portion of our order stands. The Supreme Court having held that our directive that the district court enter final judgment on the recalculated amount, without offering the plaintiff the option of new trial, violated the Seventh Amendment, however, that portion of our order is no longer valid. Accordingly, the district court is hereby ordered to recalculate plaintiff Hetzel's award of damages for emotional distress. In recalculating damages, the district court is, pursuant to our earlier mandate, to "closely examine the awards in Bradley v. Carydale Enter., 730 F.Supp. 709, 726-27 (E.D.Va.1989), and McClam v. City of Norfolk Police Dep't., 877 F.Supp. 277, 284 (E.D.Va.1995), which we believe are comparable to what would be an appropriate award in this case." Hetzel v. County of Prince William, 89 F.3d 169, 173. Following this recalculation, the district court should offer the plaintiff the choice of accepting the reduced award or proceeding to a new trial.
 
 
 48
 IT IS SO ORDERED.