**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CAROL M. KONKEL,
Plaintiff-Appellee,

v.

BOB EVANS FARMS INCORPORATED,

Defendant-Appellant,

and

ECOLAB, INCORPORATED,
Defendant.

No. 97-1824

CAROL M. KONKEL,
Plaintiff-Appellant,

v.

BOB EVANS FARMS INCORPORATED,

Defendant-Appellee,

and

ECOLAB, INCORPORATED,
Defendant.

No. 97-1867

Appeals from the United States District Court
for the Western District of Virginia, at Harrisonburg.
B. Waugh Crigler, Magistrate Judge.
(CA-96-20-H)

Argued: September 24, 1998

Decided: January 4, 1999

Before MURNAGHAN and HAMILTON, Circuit Judges, and
MAGILL, Senior Circuit Judge of the United States Court of
Appeals for the Eighth Circuit, sitting by designation.

Affirmed in part, vacated in part and remanded by published opinion. Judge Hamilton wrote the opinion, in which Judge Murnaghan and Senior Judge Magill joined.

_____

**COUNSEL**

**ARGUED:** Steven Walter Bancroft, TRICHILO, BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C., Fairfax, Virginia, for Appellant. Robert Theodore Mitchell, Jr., James Anthony Klenkar, HALL, MONAHAN, ENGLE, MAHAN & MITCHELL, Winchester, Virginia, for Appellee. **ON BRIEF:** Melissa S. Hogue, Michael J. Carita, TRICHILO, BANCROFT, MCGAVIN, HORVATH & JUD-KINS, P.C., Fairfax, Virginia, for Appellant.

_____

**OPINION**

HAMILTON, Circuit Judge:

Bob Evans Farms, Inc. (Bob Evans), owner of a restaurant in Carlisle, Pennsylvania, appeals from a $1,000,000 judgment in favor of one of its customers, Carol Konkel (Konkel), as compensation for her physical and emotional damages flowing from her ingestion of hot tea, contaminated with Eco-line Finish cleaning detergent, served to her at Bob Evans.[1] The principal issue presented in this appeal is whether the magistrate judge abused his discretion in denying Bob Evans' motion pursuant to Federal Rule of Civil Procedure 59(a) for a new trial based upon the alleged excessiveness of the jury's compensatory damage award. Concluding that $25,000 in compensatory damages is the outermost award that could be sustained, we reduce the award to $25,000 or grant a new trial _nisi_ remittitur at Konkel's option. With regard to the additional issues presented on appeal, we affirm the magistrate judge's denial of Bob Evans' alternative

_____

[1] Ecolab, Inc., the manufacturer of Eco-line Finish cleaning detergent, was originally also a defendant in this action. However, Konkel dismissed her claims against Ecolab, Inc. prior to trial. Ecolab, Inc. is not a party in this appeal.

2

motions under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law or for a new trial, his denial of Bob Evans' motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6), his denial of Konkel's motion to amend the ad damnum clause of her complaint to add a request for punitive damages, and his grant of Bob Evans' motion in limine to exclude evidence to support a claim for punitive damages.

I

On March 22, 1994, Konkel had dinner at Bob Evans and ordered hot tea with her meal. The waitress brought Konkel a carafe full of hot water, a tea bag, and a mug.[2] After allowing the tea to steep in the carafe, Konkel poured herself a full mug of hot tea and drank it. Shortly thereafter, the waitress inquired as to whether Konkel wanted a refill of hot water so that she could have a second mug of hot tea. Upon Konkel's affirmative response, the waitress poured hot water from a coffee pot into Konkel's carafe.

Konkel waited for the tea to steep in the carafe, poured herself a second mug of hot tea, and then swallowed one mouthful of it. Upon swallowing, Konkel noticed that the hot tea tasted soapy, and she felt a burning sensation in her throat. Konkel notified Bob Evans' staff that her hot tea tasted soapy, and the waitress and the manager smelled the hot tea and stated that the hot tea smelled like the Eco-line Finish cleaning detergent that Bob Evans used to clean its coffee pots. The manager concluded that the waitress had accidentally served Konkel from a coffee pot that contained a packet of Eco-line Finish cleaning detergent.

After leaving Bob Evans, Konkel continued to suffer pain in her chest and therefore visited the emergency room. At the emergency room, Dr. Lawrence Boyler, an emergency room physician, examined Konkel, diagnosed her slightly red throat as esophageal chemical burn, and estimated that she would recover rapidly. Almost a year after the incident at Bob Evans, Konkel suffered chest discomfort and visited her family physician, Dr. Edward Cullen, who performed tests

_____

[2] The carafe and the mug each could hold approximately one cup of liquid.

3

producing normal results. Thereafter, Konkel visited two gastroenter-
ology specialists who performed tests also producing normal results.

Despite the fact that all the tests on Konkel produced normal
results, one of the specialists, Dr. Nicholas Snow, diagnosed Konkel
as suffering from heightened visceral nociception (HVN)[3] of the
esophagus and prescribed her anti-depressants to numb the nerves in
her esophagus. Dr. Snow concluded that Konkel's condition was the
result of her ingestion of the "mouthful" of hot tea containing Eco-
line Finish cleaning detergent at Bob Evans a year and a half earlier.

Thereafter, Konkel filed a complaint against Bob Evans in the Cir-
cuit Court of Clarke County, Virginia, alleging that Bob Evans acted
negligently and in breach of its express and implied warranties "that
the food and beverages served at [Bob Evans] were safe and fit for
human consumption" when it served Konkel hot tea containing Eco-
line Finish cleaning detergent. (J.A. 20). In her complaint, Konkel
requested $1,000,000 in compensatory damages on each of her
claims, but did not request punitive damages. Bob Evans subse-
quently removed the case to the United States District Court for the
Western District of Virginia based upon diversity jurisdiction. See 28
U.S.C. § 1332. The case proceeded into the discovery phase, with the
parties agreeing that the law of Pennsylvania applied to all substantive
issues in the case.

Three days before the end of discovery, in supplemental answers
to Bob Evans' interrogatories, Konkel requested punitive damages. In
response, Bob Evans moved in limine to exclude evidence to support
a claim for punitive damages because Konkel did not aver them in her
complaint. Following the close of discovery, Konkel moved for sum-
mary judgment on all counts.

During a hearing on the motions, Konkel orally moved for leave
to amend her ad damnum clause to request punitive damages, but the
magistrate judge denied her motion. At the conclusion of the hearing,

_____

[3] **Dorland's Illustrated Medical Dictionary**, 1141, 1831-32, (28th ed.
1994), defines "nociception" as "pain sense" and "visceral" as pertaining
to "any large interior organ in any one of the three great cavities of the
body, especially in the abdomen."

4

the magistrate judge denied Konkel's motion for summary judgment as to her negligence claim, but granted the motion as to her breach of warranties claim with respect to liability only. The magistrate judge granted Bob Evans' motion in limine to exclude evidence of punitive damages because Konkel did not allege sufficient facts in her complaint to give Bob Evans notice of her claim for punitive damages, and leave to amend at such a late date would prejudice Bob Evans.

The case proceeded to trial before a jury on the issue of damages for Bob Evans' breach of warranties and on the issue of whether Bob Evans' conduct constituted negligence. By consent of the parties, a magistrate judge presided over the trial. See 28 U.S.C. § 636(c). At trial, Konkel's theory of the case was that, as evidenced by Dr. Snow's expert testimony, Bob Evans' conduct caused her serious, substantial, and permanent physical injury that had a devastating impact on her life. Konkel testified that her HVN caused her to severely restrict her diet, thereby affecting her relationships with her husband, her family, and her friends. In response to Konkel's evidence, Bob Evans introduced the testimony of Dr. Anthony Kalloo. Dr. Kalloo acknowledged that HVN was a medical condition, but opined that the data was insufficient to diagnose Konkel with HVN and that Konkel's esophagus was normal.

At the close of Konkel's evidence, Bob Evans moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) because Konkel had not submitted medical bills or records and the only evidence of causation was Dr. Snow's testimony. The magistrate judge granted Bob Evans' motion in part, excluding testimony of any medical expenses Konkel incurred in the past or expected to incur in the future and also excluding any instruction to the jury regarding medical expenses.

At the close of evidence, Konkel moved for judgment as a matter of law pursuant to Rule 50(a) on her negligence claim. The magistrate judge granted the motion in part, concluding that as a matter of law Bob Evans had breached its duty of care, but the magistrate judge sent to the jury the issue of what compensatory damages were proximately caused by Bob Evans' conduct. Specifically, on the issue of damages, the magistrate judge instructed the jury to determine whether Konkel

5

had suffered or would suffer damages -- past or future physical pain, mental anguish, humiliation, embarrassment, inconvenience, or loss of enjoyment of life -- and if so, the amount of those damages. Following its deliberations, the jury found that Konkel suffered damages in the amount of $1,000,000 as a proximate result of Bob Evans' conduct.

Subsequently, Bob Evans moved for a new trial pursuant to Federal Rule of Civil Procedure 59(a) based upon the alleged excessiveness of the jury's compensatory damage award. Specifically, Bob Evans contended that the jury's compensatory damage award was excessive because Konkel had not submitted objective medical evidence of injury, medical expenses, lost wages, lost earning capacity, or loss of employment opportunities. Bob Evans also moved for judgment as a matter of law or in the alternative for a new trial pursuant to Federal Rule of Civil Procedure 50(b). The magistrate judge issued a joint order denying the Rule 59(a) and the Rule 50(b) alternative motions because Dr. Snow's testimony provided "a legally sufficient evidentiary basis for the jury's verdict." (J.A. 552). Additionally, the magistrate judge concluded that the jury's verdict was "not against the clear weight of the evidence," and "the outcome was not a miscarriage of justice." Id. Accordingly, the magistrate judge entered judgment in favor of Konkel in the amount of $1,000,000.

Thereafter, Bob Evans moved for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6) based on jury misconduct. In support of its motion, Bob Evans attached an affidavit from Bob Evans' counsel's secretary. In the affidavit, the secretary stated that she had spoken to the foreman of the jury, who told her that the jury had performed an experiment in the jury room "to determine the amount of liquid that was in the coffee pot at Bob Evans" when the waitress refilled Konkel's carafe, and in performing the experiment, had used a cup not admitted into evidence. (J.A. 566). The magistrate judge denied Bob Evans' Rule 60(b)(6) motion, concluding the jury's experiment did not constitute jury misconduct, because the experiment was merely an examination of the admitted evidence and an application of the admitted testimony regarding the concentration of the detergent in the hot water served to Konkel.

Bob Evans subsequently filed a timely notice of appeal, and Konkel filed a timely notice of cross-appeal. On appeal, Bob Evans con-

6

tends that the magistrate judge erred in denying its Rule 50(b) motion for judgment as a matter of law, its alternative Rule 50(b) motion for a new trial, its Rule 59(a) motion for a new trial, and its Rule 60(b)(6) motion for relief from judgment. On cross-appeal, Konkel alleges that the magistrate judge erred in denying her oral motion to amend her ad damnum clause to add a request for punitive damages and in granting Bob Evans' motion in limine to exclude evidence related to punitive damages.

II

First, we address Bob Evans' argument that the evidence was not sufficient to support the jury's findings of causation, including its obvious finding that Konkel suffered from HVN as a result of Bob Evans' conduct, and that therefore, the magistrate judge erred in denying its alternative motions under Rule 50(b) for judgment as a matter of law or for a new trial. We review a district court's denial of a Rule 50(b) motion for judgment as a matter of law de novo. See White v. County of Newberry, 985 F.2d 168, 172 (4th Cir. 1993). A Rule 50(b) motion should be granted if a district court determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings. See id. In reviewing a district court's decision on a Rule 50(b) motion, we view all the evidence in the light most favorable to the prevailing party and draw all reasonable inferences in his or her favor. See Austin v. Torrington Co., 810 F.2d 416, 420 (4th Cir. 1987). We review a denial of a motion for a new trial under Rule 50(b) for abuse of discretion. See Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp., 41 F.3d 182, 186 (4th Cir. 1994).

The question before us is whether Konkel presented sufficient evidence to support the jury's finding that she suffered damages that were proximately caused by Bob Evans' conduct. In order to establish proximate cause under Pennsylvania law, the plaintiff must show by a preponderance of the evidence that the defendant's acts or omissions were a substantial factor in causing the plaintiff's harm. See First v. Zem Zem Temple, 686 A.2d 18, 21 (Pa. Super. 1996).

Konkel presented the testimony of Dr. Snow that the likely permanent HVN she suffered was caused by Bob Evans' conduct. In

7

response, Bob Evans presented the testimony of Dr. Kalloo, who opined that the data was insufficient to diagnose Konkel with HVN and that Konkel's esophagus was normal. Obviously, it was up to the jury to decide which expert -- Dr. Snow or Dr. Kalloo -- was more credible. Through its verdict, it is evident that the jury found Dr. Snow more credible, and we are in no position to take issue with that finding. In short, Dr. Snow's testimony was sufficient to support a reasonable jury's finding that Bob Evans' conduct was a substantial factor in causing Konkel's HVN. Accordingly, we conclude that the magistrate judge's denial of Bob Evans' motion for judgment as a matter of law under Rule 50(b) was proper.[4]

III

Next, we address Bob Evans' contention that the $1,000,000 compensatory damage award is excessive, and therefore, the magistrate judge erred in denying its Rule 59(a) motion for a new trial based upon the alleged excessiveness of the jury's compensatory damage award.

We review a district court's denial of a Rule 59(a) motion for a new trial based upon the alleged excessiveness of the jury's compensatory damage award for abuse of discretion, giving "the benefit of every doubt to the judgment of the trial judge." Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 438-39 (1996). Whether a jury award is excessive is a question of law. See id. at 436-38. If we find a jury's damage award excessive, we may "grant a new trial nisi remittitur, which gives the plaintiff the option of accepting the remittitur or of submitting to a new trial." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 305 n.2 (4th Cir. 1998).

The Supreme Court in Gasperini addressed the appropriate standard under which a district court must evaluate a Rule 59(a) motion for a new trial based upon the alleged excessiveness of the jury's compensatory damage award. See Gasperini, 518 U.S. at 438-39. The
_____

[4] For the reasons stated above, we conclude that the magistrate judge's denial of Bob Evans' alternative Rule 50(b) motion for a new trial was not an abuse of discretion. See James v. Jacobson, 6 F.3d 233, 239 (4th Cir. 1993).

Supreme Court determined that because the doctrine of Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), "precludes a recovery in federal court significantly larger than the recovery that would have been tolerated in state court," Gasperini, 518 U.S. at 430-31, a district court sitting in diversity must apply state law standards when it considers a Rule 59(a) motion for a new trial based upon the alleged excessiveness of the jury's compensatory damage award. See id. at 438-39.

Gasperini overruled our circuit precedent that called for district courts sitting in diversity to apply federal law in determining the merits of a motion pursuant to Rule 59(a) for a new trial based upon the alleged excessiveness of the jury's verdict. See Johnson v. Parrish, 827 F.2d 988, 991 (4th Cir. 1987). Specifically, in our circuit prior to Gasperini, a district court was required to set aside a jury's verdict as excessive "even when such a verdict is supported by substantial evidence `if [it] is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice.'" Johnson, 827 F.2d at 991 (quoting Aetna Cas. & Sur. Co. v. Yeatts, 122 F.2d 350, 352 (4th Cir. 1941)).

Under the Supreme Court's mandate in Gasperini , the magistrate judge was required to apply Pennsylvania law in determining whether the jury's $1,000,000 compensatory damage award in favor of Konkel was excessive. Under Pennsylvania law, a jury's damage award is considered excessive if it does not fall "within the necessarily uncertain limits of fair and reasonable compensation in the particular case" or if the award "so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake, or corruption." Carminati v. Philadelphia Transp. Co., 176 A.2d 440, 445 (Pa. 1962).

Here, the magistrate judge applied federal law in testing the jury's compensatory damage award for excessiveness, concluding that it was not against the clear weight of the evidence and was not a miscarriage of justice. Such application was erroneous in light of Gasperini. Because the magistrate judge applied the wrong standard in testing the jury's compensatory damage award for excessiveness, a remand is required unless we conclude that the magistrate judge would have

9

reached the same result applying Pennsylvania law as he did applying federal law.

Applying federal law, the magistrate judge concluded that the jury's compensatory damage award was not against the clear weight of the evidence and was not so excessive as to be a miscarriage of justice. Because the federal excessiveness standard is analogous to the Pennsylvania excessiveness standard, to say that the magistrate judge would not have concluded that the jury's compensatory damage award was "within the necessarily uncertain limits of fair and reasonable compensation in the particular case" and was not so extravagant that it "so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake, or corruption," Carminati, 176 A.2d at 445, would strain credulity. Therefore, because the magistrate judge would have reached the same result applying Pennsylvania law as he did applying federal law, a remand is not only unwarranted but would be a waste of judicial resources. Accordingly, we turn to consider whether the magistrate judge's denial of Bob Evans' motion for a new trial based upon the alleged excessiveness of the jury's compensatory damage award was an abuse of discretion.

The Pennsylvania courts apply the following factors when determining whether a jury's damage award is excessive:"(1) the severity of the injury; (2) whether the injury is demonstrated by objective physical evidence or subjective evidence; (3) whether the injury is permanent; (4) the plaintiff's ability to continue employment; (5) disparity between the out of pocket expenses and the amount of the verdict; and (6) damages plaintiff requested in his complaint." Stoughton v. Kinzey, 445 A.2d 1240, 1242 (Pa. Super. 1982). As Pennsylvania courts have recognized, because the circumstances of each case are unique, only those factors relevant to the particular case at issue should be considered. See Mineo v. Tancini, 502 A.2d 1300, 1305 (Pa. Super. 1986).

In this case, we believe the jury's compensatory damage award is not "within the necessarily uncertain limits of fair and reasonable compensation." Carminati, 176 A.2d at 445. Although the testimony of Dr. Snow indicates that Konkel's likely permanent HVN was caused by Bob Evans' conduct, Konkel produced no objective physi-

10

cal evidence concerning her injury, no evidence of lost wages, no evidence of lost future earning capacity, no evidence of loss of future employment, and no evidence of out-of-pocket expenses. When the lack of this evidence is viewed in connection with Konkel's evidence concerning the severity and permanency of her injury, it becomes evident that Pennsylvania courts would view this compensatory damage award as excessive. See also Kemp v. Philadelphia Transp. Co., 361 A.2d 362, 364-66 (Pa. Super. 1976) (finding damage award of $15,000 excessive where woman complained of knee and back pain but there was no objective medical evidence, no evidence of permanency, no evidence of lost earning capacity, and whose out-of-pocket expense were only $535) (citing Meholiff v. River Transit Co., 20 A.2d 762, 764-65 (Pa. 1941) (reducing verdict when prediction of permanency was based upon plaintiff's subjective claims of pain); Brown v. Paxton, 2 A.2d 729, 730-31 (Pa. 1938) (reducing verdict when evidence showed that plaintiff continued at same employment with no lost earning capacity)). In our view, taking into account the relevant factors under Pennsylvania law, an award of $25,000 is the outermost award that could be sustained. We, therefore, reduce the jury's compensatory damage award to $25,000 or grant a new trial nisi remittitur at Konkel's option.

IV

Next, we turn to Bob Evans' allegation that the magistrate judge erred in denying its motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(6) based upon jury misconduct. According to Bob Evans, the jury's experiment using a cup not admitted into evidence constituted jury misconduct.

This Court will not disturb a district court's denial of a Rule 60(b)(6) motion absent an abuse of discretion. See National Org. for Women v. Operation Rescue, 47 F.3d 667, 669 (4th Cir. 1995). We conclude that the magistrate judge did not abuse his discretion in denying Bob Evans' Rule 60(b)(6) motion. Accordingly, we affirm on this issue.

Experiments performed by juries, "which have the effect of putting them in possession of evidence not offered at trial," constitute jury misconduct requiring a new trial, unless no prejudice results. See

11

United States v. Beach, 296 F.2d 153, 158 (4th Cir. 1961). However, jury experiments that are merely more critical examinations of exhibits than the examinations made during the trial are not objectionable. See id. at 158-59.

The affidavit submitted by Bob Evans indicates that the jury performed an experiment "to determine the amount of liquid that was in the coffee pot" containing the packet of Eco-line Finish cleaning detergent. (J.A. 566). In performing this experiment, the jury, according to the affidavit, used the coffee pot and carafe, which were both exhibits, and a cup, which had not been admitted into evidence. The jury then "read the directions off the packet of detergent that was an exhibit and found that the liquid solution swallowed by [Konkel] was twelve times stronger than it was supposed to be." Id.

We conclude that the jury's experiment did not constitute jury misconduct. The jury simply examined the coffee pot, carafe, and packet of detergent that were admitted into evidence and applied the testimony that coffee pots at Bob Evans were cleaned with one packet of detergent, the testimony that the carafe was practically empty when the waitress refilled it with water from the coffee pot, and the testimony that the mug from which Konkel drank the soapy solution could hold approximately one cup of liquid. Because the jury simply applied the testimony concerning the size of Konkel's mug, the jury's experiment did not place it in possession of evidence not presented at trial. Accordingly, we conclude that the jury's experiment using a cup not admitted into evidence did not constitute jury misconduct. We therefore affirm the magistrate judge's denial of Bob Evans' Rule 60(b)(6) motion.[5]

_____

[5] To the extent that Konkel raises on cross-appeal that the magistrate judge erred in denying her oral motion to add a request for punitive damages in her ad damnum clause and the magistrate judge erred in granting Bob Evans' motion in limine to exclude evidence of punitive damages because Konkel did not aver punitive damages in her complaint, we conclude that we need not address her claims because, as is obvious, the facts in this case could not sustain an award for punitive damages under Pennsylvania law, and Konkel has proffered no evidence in this regard. See Feld v. Merriam, 485 A.2d 742, 747-48 (Pa. 1984) (noting that punitive damages may be awarded in Pennsylvania for conduct that is "malicious, wanton, reckless, willful, or oppressive") (internal quotation marks omitted).

V

For the reasons stated above, we reduce the jury's compensatory damage award to $25,000 or grant a new trial <u>nisi</u> remittitur at Konkel's option. In accord with <u>In re Board of County Supervisors</u>, 143 F.3d 835, 842 (4th Cir. 1998), the new trial may be"`upon the whole case'" or limited to the issue of damages alone, at the election of Konkel. <u>Id.</u> (quoting <u>Kennon v. Gilmer</u>, 131 U.S. 22, 30 (1889)). In all other respects, we affirm the judgment.

<u>AFFIRMED IN PART, VACATED
IN PART, AND REMANDED</u>

13