**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ZED S. FRENCH, III,
Plaintiff-Appellee,

v.

No. 98-2135

WAL-MART STORES, INCORPORATED,
d/b/a Sam's Club,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, District Judge.
(CA-97-42-3)

Argued: April 6, 1999

Decided: August 23, 1999

Before ERVIN, MICHAEL, and KING,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stephen Atherton Northup, MAYS & VALENTINE,
L.L.P., Richmond, Virginia, for Appellant. Matthew B. Murray,
RICHMOND & FISHBURNE, Charlottesville, Virginia, for Appel-
lee. **ON BRIEF:** Timothy S. Baird, MAYS & VALENTINE, L.L.P.,
Richmond, Virginia, for Appellant. John G. Berry, BERRY &
EARLY, Madison, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Zed French sued Wal-Mart seeking damages for personal injuries sustained in an automobile accident, claiming that Wal-Mart had negligently installed new tires on the vehicle in which he was riding. Wal-Mart appeals from the jury award to Mr. French of $1 million in compensatory damages, plus interest, rendered in the district court for the Western District of Virginia. Finding no error, we affirm.

I.

A.

On July 17, 1995, Wal-Mart's Sam's Club store in Charlottesville, Virginia, installed new tires on the Jeep Cherokee belonging to Brian Taylor, Mr. French's friend. On July 23, 1995, Mr. French rode with Taylor in his Jeep to attend a golf tournament in Richmond. As they traveled east on Interstate 64, the left front wheel came off Taylor's vehicle, causing the Jeep to crash down toward the pavement and veer violently before coming to rest near a guardrail. Anticipating a collision with the guardrail, Mr. French braced himself with such force that he sustained a back injury that has left him in chronic pain.

Mr. French sued Wal-Mart in district court for negligently installing the new tires on Taylor's Jeep.[1] During a three-day jury trial conducted in April 1998, Mr. French presented evidence from a variety of witnesses, including himself and his family.

At the time of trial, Mr. French was forty-nine years of age and principal of the William Monroe Middle School in Greene County,

_____

[1] The district court possessed jurisdiction of the civil action pursuant to 28 U.S.C. § 1332(a).

2

Virginia. Mr. French was that school's first and only principal, a position he had occupied for twelve years. He had decided, by the time of trial, to seek another position in the school system, because the pain of his back injury deprived him of the energy he needed to properly function as a middle school principal. Mr. French was scheduled to assume a new position at the end of the 1997-98 school year as an elementary school principal, a less physically and emotionally stressful job.

Mr. French testified regarding the impact of his back injury, which he claimed had had a profound and devastating effect on his family life. For example, since the accident he and his wife were able to only infrequently have sexual relations because the pain he suffered for two or three days thereafter was "beyond reason." Mr. French also testified that he was an avid golfer, had played the game regularly since the age of four or five, and that, before the accident, he had possessed a handicap that ranged between two and three. Indeed, prior to the back injury, golf was his main relief from job stress and he usually played two or three times a week. Mr. French has been unable to play golf since the accident.

Another hobby and stress release that Mr. French actively pursued before the accident was yard work. After the accident, however, he has been able to do only about ten percent of what he had done before. He is not able to use their riding lawnmower, because the shaking and jerking aggravates his back. Mr. French testified that he and his family live on a small lake, and that before the accident he would go boating on the lake two or three times a month. He also enjoyed fishing. After the accident he was not able to go boating or fishing.

Mr. French's wife, son, and daughter testified to his limitations after the accident. While he was, before the injury, active, energetic, and involved in many activities, the accident left him severely restricted. According to his daughter, Mr. French was unable to sit long enough in church to watch her sing; nor could he go to basketball games to watch her lead cheers. She testified that now, it is as if "he's not always there." Both Mr. French's son and daughter testified that he was no longer able to play golf with them, nor was he able to walk the course with them as they played in golf tournaments. Mr.

3

French's wife summarized his current relationship with his family: "He just has to be left out now."

Under the evidence of Tim McMillan, the assistant principal at William Monroe Middle School, Mr. French was, before the accident, in "constant motion." McMillan also described Mr. French before the accident as a rapid thinker and mover -- "a little bit hyper." But since the accident, McMillan noticed that at times Mr. French was very lethargic and his mental acuity occasionally was not what it used to be. McMillan said that Mr. French used to frequently move up and down the halls, thus interacting often with the students. After the accident, however, he generally stayed in the office areas. McMillan observed that Mr. French was always stretching his back, and that he occasionally had to go home in the middle of the day to ice down his back.

Mr. French presented evidence that he lost more than 240 days of work between the time of the accident and the trial, which resulted in approximately $50,000 in lost wages. His medical expenses since the accident totaled nearly $17,000. Mr. French's new position as elementary school principal paid almost $2,000 less than his position as middle school principal; his future lost wages totaled approximately $32,000.

B.

Mr. French complained of back pain immediately after the accident, and sought medical attention the following morning when his back continued to hurt. He went to see Dr. David Duani in Charlottesville, who had been Mr. French's family doctor since 1983. Dr. Duani began treating Mr. French's back injury and continued treatment through the time of trial. He saw Mr. French many times after the accident for "unrelenting back pain" and referred Mr. French to multiple health care providers, including Dr. Edward Isaacs, the University of Virginia Pain Clinic, and a physical therapist. In Dr. Duani's view, the accident caused Mr. French to suffer an acceleration/deceleration injury resulting in ligamentous damage. Dr. Duani testified that Mr. French's ongoing problem seemed to be joint instability in the low back due to serious injuries to the surrounding ligaments.

4

Dr. Isaacs, a board certified neurologist with a specialty in musculoskeletal medicine, first saw Mr. French in October 1997. Dr. Isaacs prescribed a strong narcotic, Levo-Dromoran, for Mr. French's pain.[2] He diagnosed Mr. French's condition as downward compression of the sacrum into the pelvis, which disrupts the normal movement of the joints involved. Mr. French wears a belt provided by Dr. Isaacs that squeezes the sacroiliac joint in order to maintain some stability.[3]

In sum, Dr. Isaacs described the medical effects of the accident on Mr. French as including the following: (1) Mr. French's pain is chronic and permanent, necessitating lifelong use of narcotic medication; (2) he will never regain the state of health he enjoyed before the accident; and (3) he will need continued physical therapy and physician care.

Prior to trial, Wal-Mart moved several times to exclude the testimony and report of Larry Sinsabaugh, Ph.D., a vocational rehabilitation expert, pertaining to the issue of lost earning capacity. Although the district court, for the most part, rejected Wal-Mart's efforts in this regard, it barred Dr. Sinsabaugh from testifying as to the specific sum he found to represent Mr. French's lost earning capacity. The court ruled that Dr. Sinsabaugh could offer testimony regarding Mr. French's "capacity and what he predicts [French's] competence will be to do the job."

Based on his review of Mr. French's medical records, employment history, performance reviews, and interviews with Mr. and Mrs. French, as well as vocational diagnostic tests, Dr. Sinsabaugh concluded that Mr. French's future earning capacity was diminished, and that he was at risk of losing his new job as an elementary school prin-

_____

[2] Levo-Dromoran is the trademark for preparations of levorphanol tartrate, "a synthetic narcotic analgesic with properties and actions similar to those of morphine." Dorland's Medical Dictionary 923 (28th ed. 1994) [hereinafter Dorland's].

[3] "Sacroiliac" is defined as "denoting the joint or articulation between the sacrum and the ilium and the ligaments associated therewith." Dorland's at 1479. The "sacrum" is "the triangular bone just below the lumbar vertebrae." Id. The "ilium" is "the expansive superior portion of the hip bone." Id. at 819.

5

cipal. Dr. Sinsabaugh elaborated that Mr. French's earning capacity was diminished because of, <u>inter alia</u>, the permanency of his condition, his continued need to take narcotic medication, and the restrictions he has in standing, sitting, walking, and other functions he needs to possess in order to perform his work.

In its defense pertaining to damages, Wal-Mart produced only the expert testimony of Dr. David Uruqia, whom Wal-Mart chose to perform a Rule 35 physical examination on Mr. French. Dr. Uruqia testified that the injury from the accident was a lower back sprain or strain that would have healed in three to four months. Dr. Uruqia also testified that the cause of Mr. French's continuing pain in his lower back was preexisting osteoporosis and disc degeneration.

At the conclusion of a three-day jury trial, the jury was instructed, conducted its deliberations, and returned a verdict for Mr. French in the sum of $1 million plus interest.**4** On June 24, 1998, the district

_____

**4** The jury was given the following instruction on damages, which provides in pertinent part:

> If you find your verdict for the plaintiff Zed S. French, III, then in determining the damages to which he is entitled, you shall consider any of the following which you believe by the greater weight of the evidence was caused by the negligence of the defendant:
>
> . . .
>
> 2) any physical pain and mental anguish he suffered in the past and any that he may be reasonably expected to suffer in the future;
>
> . . .
>
> 4) any inconvenience caused in the past and any that may be reasonably expected to occur in the future
>
> 5) any medical expenses incurred in the past and any that may be reasonably expected to occur in the future;
>
> 6) any earnings he lost because he was unable to work at his calling;
>
> 7) any loss of earnings and lessening of earning capacity, or either, that he may reasonable [sic] be expected to sustain in the future.

6

court denied Wal-Mart's motion for a new trial. Wal-Mart filed a timely Notice of Appeal on July 22, 1998.

II.

Wal-Mart raises four issues on appeal, all relating to the damage award.[5] Wal-Mart asserts that the district court abused its discretion in the following ways: (1) instructing the jury on future medical expenses; (2) instructing the jury on loss of earning capacity; (3) admitting Dr. Sinsabaugh's testimony; and (4) refusing to grant Wal-Mart's motion for a new trial. We will address each of the issues in turn. Because the district court had jurisdiction based on diversity, the substantive law of Virginia applies, including the law applicable to the determination of Mr. French's damages. See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 438-39 (1996).

A.

Wal-Mart contends that the district court erred in giving a jury instruction on future medical expenses.[6] We review a district court's decision whether to give a jury instruction, and the content of that instruction, for abuse of discretion. United States v. Bostian, 59 F.3d 474, 480 (4th Cir. 1995). This court will reverse for error in jury instructions "only if the error is determined to have been prejudicial, based on a review of the record as a whole." Wellington v. Daniels, 717 F.2d 932, 938 (4th Cir. 1983).

In a diversity action, state law determines the content of jury instructions. Hardin v. Ski Venture, Inc., 50 F.3d 1291, 1293 (4th Cir. 1995). Under Virginia law, when a reviewing court considers whether there was sufficient evidence to warrant a jury instruction, the court views the evidence in the light most favorable to the party requesting

_____

> Your verdict shall be for such sum as will fully and fairly compensate the plaintiff for the damages sustained as a result of the defendant's negligence.

[5] Wal-Mart has raised no issues on appeal with respect to liability.

[6] See supra note 4 (subparagraph (5)).

the instruction. <u>Dalton v. Commonwealth</u>, 512 S.E.2d 142, 148 (Va. Ct. App. 1999). The evidence relied upon to support an instruction must be "more than a scintilla." <u>Rosen v. Greifenberger</u>, 513 S.E.2d 861, 865 (Va. 1999) (citations omitted).

Additionally, under Virginia law, "a plaintiff must show the amount of his damages with reasonable certainty. Proof with mathematical precision is not required, but there must be at least sufficient evidence to permit an intelligent and probable estimate of the amount of damage." <u>Hailes v. Gonzales</u>, 151 S.E.2d 388, 390 (Va. 1966) (citation omitted).

Wal-Mart asserts that Mr. French failed to present sufficient evidence to permit a jury to reasonably estimate the amount of his future medical expenses. Wal-Mart contends that Mr. French was required to show not just the necessity of future medical expenses, but their probable cost, and claims that his proof failed to pass muster in this regard.

Dr. Isaacs testified that Mr. French would require physical therapy in the future and that he would have to take narcotic medication for the rest of his life for his chronic pain. Dr. Isaacs also testified that he anticipated seeing Mr. French "rather closely" over the next twelve weeks, and Mr. French's next appointment with Dr. Isaacs was scheduled within a week or so of Dr. Isaac's testimony.

Mr. French also presented evidence of his past medical expenses, including the costs of visits to Dr. Isaacs and the physical therapist, as well as the cost of his narcotic medication. J.A. 733-38. This evidence of past costs, considered together with the testimonial evidence regarding future medical treatment and need for medication, is sufficient, when viewed in the light most favorable to Mr. French, to warrant the instruction given to the jury on future medical expenses. Accordingly, we are unable to find that the district court abused its discretion in instructing the jury on future medical expenses.

B.

Wal-Mart next contends that the district court erred in giving the

8

jury instruction for loss of earning capacity**7** because Mr. French failed to adduce sufficient evidence upon which the jury could reasonably estimate the amount of damages for lost earning capacity. We also disagree with Wal-Mart on this point of contention.

We are guided in this regard by the decision of the Supreme Court of Virginia in Exxon Corp. v. Fulgham, 294 S.E.2d 894 (Va. 1982). In that case, the court held that evidence that the plaintiff had lost fifty percent of the use of his left wrist and hand as a result of an automobile accident and an ensuing operation, and that such limitation affected his ability to do his job as an office-machine repairman, was sufficient to support the giving of an instruction on loss of earning capacity. In so holding, the court pointed to the unchallenged medical testimony regarding the permanence of the limitation of motion in his wrist and Fulgham's testimony regarding his diminished capacity to perform his work and other activities. This evidence was described as "sufficient for the jury to have found that by reason of the injury to his left wrist, the plaintiff has sustained a lessening of earning capacity in the future." Id. at 898. The court viewed as immaterial the fact that plaintiff Fulgham was earning more at the time of trial as an office-machine repairman than he earned in the same line of work before the accident. See id. at 897.

In this case, Mr. French's change of jobs -- from middle school principal to the less strenuous and lower paid position of elementary school principal -- was powerful evidence that Mr. French had suffered a loss of earning capacity. Despite Wal-Mart's contention to the contrary, that Mr. French was, at the time of trial, still working as the principal of William Monroe Middle School simply does not preclude the giving of the instruction on loss of earning capacity. See id. at 897. In addition, Dr. Sinsabaugh testified to the jury that Mr. French was also at risk of losing his job as an elementary school principal in the future, because

> of his limitations, the permanency of his condition, the demonstrated time missed, the continued need to take the narcotic medication, [and] the restrictions he has in standing,

_____

**7** **See supra** note 4 (subparagraph (6)).

> sitting, reaching, walking and all those other functions he
> needs to work.

Under the authority of <u>Fulgham</u>, the testimony of Dr. Sinsabaugh, coupled with the medical evidence of Dr. Isaacs and Mr. French's testimony regarding his limitations and chronic pain after the accident, was clearly sufficient to support the jury instruction on loss of earning capacity. <u>Fulgham</u>, 294 S.E.2d at 898; <u>see also Clark v. Chapman</u>, 385 S.E.2d 885, 892 (Va. 1989) (testimony from doctor that plaintiff suffered partial permanent disability in left arm and testimony from plaintiff regarding chronic pain sufficient to support a jury instruction on loss of earning capacity). Therefore, we also conclude that the district court did not abuse its discretion in giving the loss of earning capacity instruction to the jury.

C.

Wal-Mart also claims in its appeal that the district court erred in allowing Dr. Sinsabaugh to testify that Mr. French suffered a loss of earning capacity because Mr. French was at risk of losing his elementary school position in the future. Wal-Mart contends that this testimony was speculative and Dr. Sinsabaugh's methods were unreliable. This court also reviews a district court's decision to admit or exclude expert testimony for abuse of discretion, <u>Kopf v. Skyrm</u>, 993 F.2d 374, 378 (4th Cir. 1993), including a district court's decision that expert testimony satisfies the test for relevance and reliability under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). <u>Benedi v. McNeil-P.P.C., Inc.</u>, 66 F.3d 1378, 1384 (4th Cir. 1995). An expert's testimony is admissible, under Rule 702 of the Federal Rules of Evidence, if it "rests on a reliable foundation and is relevant." <u>Kumho Tire Co. v. Carmichael</u>, 119 S. Ct. 1167, 1171 (1999) (extending <u>Daubert</u>'s gatekeeping obligations to all expert testimony). A district court has the "same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." <u>Id.</u> at 1171; <u>see also Westberry v. Gislaved Gummi AB</u>, No. 98-1540, 1999 WL 317537 (4th Cir. May 20, 1999).

As an initial matter, Wal-Mart did not object to Dr. Sinsabaugh's qualifications as a rehabilitation counselor, a field in which he had practiced for over twenty-five years. The record, which includes Dr.

10

Sinsabaugh's proffer of evidence, the numerous motions made by Wal-Mart to exclude his testimony, and the district court's consideration thereof, amply support the conclusion that the district court satisfied its gatekeeping obligations under Kumho and Daubert. It is clear that the district court gave careful consideration to the evidence provided by Dr. Sinsabaugh, and to the relevant issues asserted with respect to its admissibility.

Although the district court permitted Dr. Sinsabaugh to testify regarding Mr. French's loss of earning capacity, it limited his testimony to Mr. French's capacity and competence to perform his work as an elementary school principal. The district court did not permit Dr. Sinsabaugh to testify to the specific sum he found to represent Mr. French's lost earning capacity, because it found there was a lack of a proper foundation. Indeed, despite the district court's indication that it would relax discovery cut-offs if Wal-Mart needed more preparation time prior to trial to arrange for rebuttal expert testimony, Wal-Mart neither identified nor sought to call any witness to either rebut or dispute Dr. Sinsabaugh's testimony. And Wal-Mart, of course, had the opportunity to fully cross-examine Dr. Sinsabaugh with respect to his evidence.

Accordingly, given the circumstances of this case, we are unable to find that the district court abused its discretion in admitting Dr. Sinsabaugh's testimony.

D.

Finally, Wal-Mart contends that the district court abused its discretion by denying Wal-Mart's motion for a new trial based on excessiveness of the verdict. We review for abuse of discretion a district court's denial of a Rule 59(a) new trial motion based upon alleged excessiveness of a jury's compensatory damage award. Konkel v. Bob Evans Farm, Inc., 165 F.3d 275, 280 (4th Cir. 1999) (citation omitted). The law of Virginia governs consideration of Wal-Mart's new trial motion and supplies the standard for determining whether the jury award to Mr. French is excessive. See Gasperini, 518 U.S. at 438-39 (holding that a district court sitting in diversity must apply state law standards when it considers a Rule 59(a) new trial motion

11

based upon the alleged excessiveness of the jury's compensatory damage award); see also Konkel, 165 F.3d at 280.

The Supreme Court of Virginia has adopted the "shocks the conscience" test for review of excessiveness claims. It has clearly explained that a damage award may only be set aside as excessive if

> [it] is so excessive that it shocks the conscience of the court, creating the impression that the jury was influenced by passion, corruption or prejudice; that the jury has misconceived or misunderstood the facts or the law; or, the award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision.

Poulston v. Rock, 467 S.E.2d 479, 481 (Va. 1996). Moreover, "there is no fixed rule or standard by which damages can be measured for mental and physical suffering." Hughes v. Moore, 197 S.E.2d 214, 220 (Va. 1973). Of significance here, the district judge, in denying Wal-Mart's motion for a new trial, found that he was "not shocked that the verdict of this amount was handed down by the jury."

In support of this claim of error, Wal-Mart contends that, factoring out of the verdict approximately $100,000 in past and future lost wages and past medical expenses, there was simply insufficient evidence of pain and suffering to support the balance of the jury award.

The jury was properly instructed that it could award damages to Mr. French for "any physical pain and mental anguish he suffered in the past and any that he may be reasonably expected to suffer in the future."[8] Under Virginia law, "loss of enjoyment of life" is compensable and is included within the purview of "suffering." As the Supreme Court of Virginia has explained, "the term `suffering' can readily be understood by juries to encompass the mental anguish resulting from the loss of enjoyment of life." Bulala v. Boyd, 389 S.E.2d 670, 677 (Va. 1990) (citation omitted). As discussed earlier, Mr. French presented substantial evidence to the jury of pain and suffering, inconvenience,[9] and loss of enjoyment of life resulting to him from

_____

[8] **See supra** note 4 (subparagraph (2)).
[9] **See supra** note 4 (subparagraph (4)).

12

the back injury caused by the accident. Indeed, the evidence supports the conclusion that Mr. French's suffering and loss of enjoyment of life affected every aspect of his existence: from work and family to his avocation -- golf.**10** He could no longer share a bed with his wife, watch his daughter sing in the church choir, or participate in many other aspects of family, community, and work life.

Wal-Mart further argues that the district court should have examined comparable Virginia cases, and that if the court had done so, it would have concluded that an award of $1 million to French was excessive. We disagree. The district court is not required to review previous awards in similar cases; indeed, Virginia law appears to caution against such an approach. Williams Paving Co. v. Kriedl, 104 S.E.2d 758, 764 (Va. 1958). The Supreme Court of Virginia instructed in Williams Paving that

> the inadequacy or excessiveness of each verdict must be determined on the facts of the case, the character of the injuries sustained, and their resultant effect upon the injured party, which are never identical, and but seldom similar. Hence the amounts of respective verdicts for somewhat like physical injuries are by no means controlling or determinative of whether a verdict under consideration is excessive or not, or inadequate or not.

104 S.E.2d at 764.

The evidence of Mr. French's loss of enjoyment of life is more

_____

**10** The uncontradicted evidence established that Mr. French was an avid golfer who, before the accident, possessed a two-to-three handicap. This evidence substantiates the fact that he had been a very accomplished golfer. Although not of record here, the United States Golf Association (USGA), the national governing body of golf and developer of the handicap system, permits a male golfer with a 2.4 handicap or better to attempt to qualify for the U.S. Men's Amateur Championship, and a 7.4 handicap or better authorizes a man over 55 to attempt to qualify for the U.S. Senior Men's Amateur Championship. A male with a handicap of 1.4 or better may seek to qualify for the United States Open Championship. See USGA Entry Forms for US Open, Men's Amateur, and Senior Amateur.

13

than sufficient to support the verdict here. Given the evidence presented at trial and summarized above, we hold that the district court did not abuse its discretion in finding that it was not shocked by the verdict, and in therefore denying Wal-Mart's motion for a new trial.

III.

Finding no reversible error with respect to the jury award of damages to Mr. French, the judgment of the district court is hereby affirmed.

AFFIRMED