**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1883**

D. LANE BAUCOM, JR.,

       Plaintiff - Appellee,

v.

DOALL COMPANY,

       Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:17-cv-00242-MOC-DSC)

Submitted: December 11, 2020               Decided: January 21, 2021

Before AGEE, WYNN and QUATTLEBAUM, Circuit Judges.

Affirmed in part, vacated in part and remanded by unpublished opinion. Judge Quattlebaum wrote the opinion, in which Judge Agee and Judge Wynn joined.

John R. Buric, Preston O. Odom III, John R. Brickley, JAMES, MCELROY & DIEHL P.A., Charlotte, North Carolina, for Appellant. Charles H. Rabon, Jr., RABON LAW FIRM, PLLC, Charlotte, North Carolina; Bonnie Keith Green, THE GREEN FIRM, PLLC, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

A year and a half after selling his family business to DoALL Company amidst assurances he would remain employed, D. Lane Baucom, Jr. was fired. Baucom filed suit alleging DoALL lacked cause to terminate him. A jury agreed, rendering a six-figure verdict in favor of Baucom. DoALL appeals, challenging the district court's denial of its post-trial motions. We affirm in part and vacate in part and remand.

I.

In 2015, DoALL purchased East Metro Supply Co., Inc. ("EMS"), an industrial supply company headquartered in Monroe, North Carolina. Prior to the purchase, Baucom and his father owned 50% of EMS, and another family owned the remaining 50%. EMS received multiple offers to purchase from other entities, but selected DoALL because DoALL planned to maintain the office in Monroe and agreed to retain EMS's employees. Baucom also stayed on as an employee.

DoALL and Baucom executed an Employment Agreement (the "Agreement") on May 4, 2015, under which Baucom was hired as "Manager of Business Development" at DoALL for a five-year term. J.A. 32–35. Under the Agreement, Baucom's compensation included an annual salary, a monthly car allowance, medical and insurance benefits, a cell phone and paid vacation.[1] But DoALL could terminate Baucom for "cause," defined as: "(i) Employee's conviction of a felony; (ii) willful misconduct of Employee; (iii) any

---

[1] Each month, Baucom received compensation totaling approximately $9,572.

2

breach of Section 6 of this Agreement; and (iv) a material breach of any other provision of this Agreement." J.A. 33. Baucom began work with DoALL serving large legacy accounts brought to DoALL from EMS. The parties dispute, however, whether his role placed him on DoALL's sales team.[2]

By the summer of 2016, DoALL became concerned with Baucom's performance. Several of the large accounts Baucom was tasked with servicing decreased their business or declined to renew their contracts.[3] Around the same time, Baucom informed Doug Mohney, Director of Sales for the Southeast Region, that he would be out of the office for a few days to undergo gallbladder surgery. David Wheeler, District Sales Manager, requested to meet with Baucom before the surgery. At their September 1, 2016, meeting, Wheeler presented Baucom with a Performance Improvement Plan ("PIP").

The PIP stated as areas of concern that Baucom had not created any new accounts in the last sixteen months, had only generated five quotes in the last month when two were required per day, had only made two joint sales when the expectation was ten per week and had decreased his base sales from "$237K (August 2015) to $48K (August 2016)." J.A. 79. The PIP also stated, "If we don't see improvement over the next **30 days**, you may be

---

[2] We note Baucom begrudges this classification, perhaps channeling Biff Loman, who described being a salesman as follows: "To devote your whole life to keeping stock, or making phone calls, or selling or buying. To suffer fifty weeks of the year for the sake of a two-week vacation, when all you really desire is to be outdoors, with your shirt off." ARTHUR MILLER, DEATH OF A SALESMAN 11 (Penguin Books 1998) (1949).

[3] Baucom says he alerted DoALL to this possibility before it occurred. Baucom's sales dropped from $177,000 per month to $80,000 per month.

subject to discipline up to and including termination. Please let me know if you need any additional training or assistance from me to achieve these expectations." J.A. 79.

Because of complications from his surgery, Baucom was not immediately able to return to work. DoALL's HR representative sent Baucom Family and Medical Leave Act ("FMLA") paperwork, which he completed. Baucom returned to work on October 24, 2016.

In early November, Baucom, Wheeler and Mohney, met to discuss Baucom's performance. Wheeler and Mohney notified Baucom of his failure to comply with the DoALL salesperson's obligations and the terms of the PIP. Despite that, Baucom requested two days of paid time off for vacation, causing Mohney more concern.

On December 6, 2016, Mohney fired Baucom. As of trial, Baucom had not found a new job except for a short period of time in January 2019.

On May 5, 2017, Baucom sued DoALL, asserting breach of the Agreement, retaliation in violation of FMLA and retaliation in violation of ERISA.[4] Baucom also sought a declaratory judgment that the Agreement's noncompete provision was unenforceable.[5]

DoALL claimed it had just cause to terminate Baucom. Consistent with that defense, it requested the district court to instruct the jury using the North Carolina pattern jury

---

[4] Baucom voluntarily dismissed his ERISA claim at the start of trial.

[5] By the time of trial, this claim was moot due to passage of time.

4

instruction N.C.P.I. § 640.14 (2018) for the definition of "just cause." As set forth in more detail below, the actual instruction given varied slightly. Ultimately, the jury found in favor of DoALL on Baucom's FMLA retaliation claim[6] and found in favor of Baucom on his breach of the Agreement claim, awarding Baucom damages of $258,444.01. DoALL moved for relief under Federal Rules of Civil Procedure 50(b), 59(a) and 59(e).[7] The district court denied DoALL's motions. DoALL timely appealed.

## II.

DoALL raises three issues on appeal. First, it argues the district court erred in its "just cause" instruction. Second, DoALL contends the district court erred in denying its Rule 50(b) and 59 Motions in light of DoALL's overwhelmingly favorable evidence at trial. Third, it argues the district court erred in denying its Motion for a New Trial *Nisi Remittitur* because the jury failed to reduce its verdict by the amount Baucom earned through alternate employment.

---

[6] Prior to trial Baucom moved in limine to preclude DoALL from presenting evidence challenging Baucom's eligibility under FMLA based on the doctrines of equitable estoppel and judicial admission. In response, DoALL moved to amend its answer. The district court granted Baucom's motion on the basis of equitable estoppel and denied DoALL's motion. Contrary to DoALL's contention, we need not address equitable estoppel as the jury ruled in favor of DoALL on Baucom's FMLA claim.

[7] Baucom also moved to amend the judgment under Rule 59(e) to award pre-judgment interest, post-judgment interest and costs. The district court granted Baucom's motion in its order dated July 15, 2019.

A.

We first examine the district court's jury instruction regarding "just cause." We generally review a lower court's jury instruction for abuse of discretion. *BMG Rights Mgmt. (US) LLC, v. Cox Commc'ns., Inc.*, 881 F.3d 293, 305 (4th Cir. 2018). But, where a party alleges that a jury instruction incorrectly states the law, we review such instruction *de novo. Id.* When an instruction is erroneous, a jury verdict will be set aside if there is a reasonable probability the error affected the jury's verdict. *Id.*

"A district court will be reversed for declining to give an instruction proposed by a party only when the requested instruction '(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired' that party's ability to make its case." *Noel v. Artson*, 641 F.3d 580, 586–87 (4th Cir. 2011) (quoting *United States v. Lighty,* 616 F.3d 321, 366 (4th Cir. 2010)).

With these standards in mind, we consider DoALL's argument concerning the "just cause" instruction. DoALL proposed the following jury instruction, adapted from the North Carolina pattern instruction:

> An employee hired for a definite period of time may be terminated before the expiration of that definite period of time for just cause. Just cause exists when an employee
>
> *fails to serve his employer faithfully and diligently*;
>
> fails to perform all the duties incident to his employment with that degree of diligence, care and attention which an ordinary person would exercise under the same or similar circumstances; or
>
> fails to fulfill one or more of the explicit terms of his employment agreement.

6

J.A. 224 (emphasis added).

Baucom's counsel asked the district court to exclude the first ground from the proposed instruction, "fails to serve his employer faithfully and diligently," as it was unnecessary. J.A. 997–1000. DoALL disagreed, contending it was appropriate for an employer to expect an employee serve faithfully and diligently. The district court sided with Baucom, reasoning the second and third grounds were sufficient where there was an express contract defining cause. Thus, the district court instructed the jury:

> Just cause exists when (1) an employee fails to perform all of the duties incident to his employment with that degree of diligence, care, and attention which an ordinary person would exercise under the same or similar circumstances, or (2) fails to fulfill one or more of the explicit terms of his employment agreement.

J.A. 1100–01.

Using the standards outlined above, we reject DoALL's argument. First, the district court correctly noted that the parties agreed to a definition of cause in the Agreement, which neither party alleged was ambiguous. Under North Carolina law, where the parties agree to a contractual definition of what constitutes "just cause," that meaning controls. *Meehan v. Am. Media Int'l, LLC*, 712 S.E.2d 904, 910–13 (N.C. Ct. App. 2011). Accordingly, an instruction limited to the parties' definition would have been sufficient.

Second, the district court, despite the contractual definition, adopted most of the instruction DoALL requested. It only excluded "fails to serve his employer faithfully and diligently" as a ground for cause. But there was no allegation that Baucom was disloyal. Thus, the exclusion of failing to serve faithfully was not in error. And the issue of diligent

7

service is sufficiently covered by the instruction the district court gave. Accordingly, we find no error here.

## B.

We next turn to the district court's denial of DoALL's Rule 50(b) and Rule 59 Motions. While distinct standards of review govern each motion, DoALL's chief argument concerning both is that there was insufficient evidence to sustain the jury's verdict finding DoALL liable for breach of the Agreement.

Before examining the evidence, we first address our standard of review. "The denial of a Rule 50(b) [motion] is reviewed *de novo*." *First Union Com. Corp. v. GATX Cap. Corp.*, 411 F.3d 551, 556 (4th Cir. 2005) (citing *Konkel v. Bob Evans Farms*, 165 F.3d 275, 279 (4th Cir. 1999)). "When a jury verdict has been returned, judgment as a matter of law may be granted only if, viewing the evidence in a light most favorable to the non-moving party (and in support of the jury's verdict) and drawing every legitimate inference in that party's favor, the only conclusion a reasonable jury could have reached is one in favor of the moving party." *Int'l Ground Transp. v. Mayor & City Council Of Ocean City, MD*, 475 F.3d 214, 218–19 (4th Cir. 2007).

The denial of a motion for new trial is reviewed for abuse of discretion. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 650 (4th Cir. 2002). We "should grant a new trial only if 1) the verdict is against the clear weight of the evidence, 2) is based on evidence which is false, or 3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Id*. Furthermore, the trial court's determination should not be reversed absent exceptional circumstances. *Id*.

8

Bearing these standards in mind, we address DoALL's arguments. DoALL points to evidence that it claims established cause existed to terminate Baucom. According to DoALL, Baucom was in the sales department from the commencement of his employment, and, therefore, he was subject to that department's duties and policies. Those requirements included generating two new quotes per day and making ten joint calls per week. Since Baucom did not satisfy these requirements, DoALL insists it was justified in terminating Baucom.

DoALL's arguments hinge on whether Baucom's job as Manager of Business Development was classified as "sales." And indeed, there was evidence that it was. For example, Baucom testified he was part of the team that received the above emails and that making sales calls was part of his job. Baucom also testified that he was expected to sell to new customers and sell product to existing customers.

DoALL also argues that even if at the beginning of his employment Baucom was not on notice that his position was in the sales department, he certainly was put on notice when he received the PIP in early September 2016, listing his department as "sales." J.A. 79. The PIP, which Baucom signed, identified problems with Baucom's performance, including no new accounts created while employed with DoALL, only five generated quotes in the last month when two per day were required, only two joint sales in the last month when ten were required per week and an overall reduction in sales. The PIP also identified Baucom's required duties. These duties included a daily call report be sent to Wheeler and Mohney by 7 AM following the previous day's calls using a template form,

9

two account manager generated quote requests per day, ten documented joint calls per week and one new account created per week.

According to DoALL, following return from his medical leave, Baucom was notified on November 17, 2016, of his failure to comply with the PIP. He also implicitly acknowledged his position in the sales department when he submitted a call report on November 22, 2016. Subsequent reports were incomplete and untimely. Thus, according to DoALL, based on Baucom's failure to comply with job requirements both before and after Baucom received the PIP, a reasonable jury could only find for DoALL on the matter of cause, and alternatively, the jury's verdict went against the clear weight of the evidence.

But Baucom disputes he was in the sales department. He contends he was supposed to take on a different role with DoALL, one entirely outside of sales. For support, Baucom cites an email exchange with DoALL approximately two months prior to the execution of the Agreement.[8] Notably, the exchange was in response to the question, "Any thoughts on the role for Lane once you get through transition? It would help if we could fill in that blank, as a sales role, sales manager role or integrated supply role." J.A. 1116. The email states, "I propose a starting title of Manager of Business Development . . . . Initial responsibilities will include assistance with customer and vendor relations, systems transitions, integrations – basically a little of everything. We will rely on Lane to give us

---

[8] DoALL failed to object to the admission of this evidence at the time it was entered. DoALL now seeks to argue this evidence is barred by the parol evidence rule. DoALL's argument is waived. *See First Va. Banks, Inc. v. BP Expl. & Oil, Inc.*, 206 F.3d 404, 407 n.1 (4th Cir. 2000) (declining to address an argument that was raised for the first time on appeal).

insight on client expectations, employee competences, vendor relationships, etc…" J.A. 1115. The exchange continues, "After 6 months, I would love to see Lane transition into Automated Procurement Manager (this is our branded name for integration) for the entire region." J.A. 1115.

Additionally, Baucom testified that when he became concerned that he would not be transitioning to a new role, he asked for clarification and more accounts. Baucom testified in his role he "had never been a cold calling sales guy door to door." J.A. 464. Baucom stated that when he received the PIP, "the first thing that jumped out to me was department sales. You know, I was not—at that time I was not in sales, at least in my mind, and I hadn't been told to be in that." J.A. 470. Baucom contends he was actively generating quote requests daily, in compliance with policies and the PIP. Baucom testified it would not have been feasible for him to generate one new account per week without a territory. Baucom also testified DoALL told him as late as November 2015, he was "going to be nothing more than a salesman moving forward," despite having no new territory, no new prospective accounts and no written description for the Business Development Manager job. J.A. 521–22.

Here, there was conflicting evidence regarding whether Baucom was in DoALL's sales department and thus bound by that department's requirements. Accordingly, there was conflicting evidence on cause for the jury to consider. In the face of conflicting evidence, "a district court must treat a jury's verdict with great deference and respect." *Stebbins v. Clark*, 5 F. App'x 196, 202 (4th Cir. 2001). Certainly DoALL presented evidence from which the jury could have found cause. But Baucom submitted evidence of

11

his confusion as to his role with DoALL and his attempts to satisfy his job responsibilities. Our question is not whether DoALL had more compelling evidence than Baucom. Our question is whether Baucom's case is impossible to believe or against the clear weight of the evidence. It was not. As such, the district court's denial of DoALL's Rule 50(b)[9] and 59 Motions was proper.

C.

Last, we consider the denial of DoALL's Motion for New Trial *Nisi Remittitur*. We review a lower court's ruling on a Rule 59 motion for new trial *nisi remittitur* for abuse of discretion. *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998). "[A] district court sitting in diversity must apply state law standards when it considers a Rule 59(a) motion for a new trial based upon the alleged excessiveness of the jury's compensatory damage award." *Konkel*, 165 F.3d at 280 (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 438–39 (1996)). "'[W]hen the jury has arbitrarily disregarded the law and the

---

[9] The district court also properly denied DoALL's Motion for Renewed Judgment as a Matter of Law on the issue of damages. Certainly, an injured party has a duty to exercise reasonable care and diligence to mitigate damages. *Zhu v. Deng*, 794 S.E.2d 808, 818 (N.C. Ct. App. 2016). This requires diligent effort to seek and accept similar employment. *Blakely v. Town of Taylortown*, 756 S.E.2d 878, 885 (N.C. Ct. App. 2014). Failure to mitigate damages is an affirmative defense. *Clark v. Bichsel*, 767 S.E.2d 145, 147 (N.C. Ct. App. 2015). Here, Baucom submitted evidence of his efforts to find alternate employment. But DoALL, not Baucom, ultimately carries the burden of proving failure to mitigate damages, and DoALL did not challenge or cross-examine Baucom on his efforts to mitigate. DoALL's sole argument centers on how few job applications Baucom submitted. Certainly, DoALL may argue that Baucom could have done more to obtain alternative employment, but the jury did not agree with DoALL that Baucom's efforts were unreasonable. The evidence here was sufficient for the jury to find in favor of Baucom on damages.

evidence . . . the judge must exercise [ ] judicial discretion and set the verdict aside.'" *Haarhuis v. Cheek*, 805 S.E.2d 720, 728 (N.C. Ct. App. 2017) (quoting *Brown v. Moore*, 213 S.E.2d 342, 349 (N.C. 1975)).

At closing, Baucom's counsel carefully informed the jury how to calculate damages, indicating Baucom sought damages of $9,572 per month for twenty-seven months less $5,200 earned by Baucom in January 2019.[10] Baucom also sought unspecified damages for the remainder of the term of the Agreement. The district court also charged the jury that any damages award should be reduced by any amount Baucom received from alternate employment.

The jury, however, failed to follow these instructions. The jury awarded Baucom $258,444.01 in damages, one cent more than what he would have received had he retained his employment at DoALL for the twenty-seven months between his termination and trial. In awarding this amount, it disregarded Baucom's admission he earned $5,200 in alternate employment the month before trial.[11] It appears clear that in spite of the parties' agreement that any amount earned by Baucom was required to be deducted from any damages award, the jury disregarded that instruction. As such, the jury's damages award goes against the clear weight of the evidence and agreement of both parties. Where "a jury award is

---

[10] Baucom's counsel stated, "Now, you will subtract . . . the money that he earned when he worked in January of this year . . . Mr. Baucom testified that he earned about $5,200 in that job for that month." J.A. 1077–78.

[11] Baucom was awarded $9,572 per month for twenty-seven months, the same amount as his compensation under the Agreement.

excessive, it is the court's duty to require a remittitur or order a new trial." *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 593 (4th Cir. 1996) (citation omitted). We therefore reduce the award by $5,200 or grant a new trial *nisi remittitur* at Baucom's option.

III.

For the foregoing reasons, the district court's jury instruction on "just cause" was proper, and we affirm the district court's denial of DoALL's Rule 50(b) and Rule 59 motions concerning sufficiency of evidence. However, we reduce the jury's award and remand to the district court, where Baucom may either accept remittitur or proceed with a new trial. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED IN PART, VACATED IN PART AND REMANDED*